847 So.2d 789 (2003)
Larry N. PRESTRIDGE
v.
Gary ELLIOTT.
No. 03-94.
Court of Appeal of Louisiana, Third Circuit.
June 4, 2003.
*790 William M. Ford, Attorney at Law, Alexandria, LA, for Plaintiff/Appellant, Larry N. Prestridge.
Randal Bryan Tannehill, Tannehill & Sylvester, Pineville, LA, for Defendant/Appellee Gary Elliott.
*791 Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and BILLY HOWARD EZELL, Judges.
EZELL, Judge.
The case presents the question of whether Gary Elliott is liable to Larry Prestridge for foundation problems in Prestridge's new home. Finding the parties did not enter into a contract, the trial court held that Elliott was not responsible for the foundation problems in Prestridge's home. Prestridge appeals.

FACTS
Elliott is a residential builder in the Pineville area, and Prestridge is a real estate agent. The two became acquaintances when Prestridge began selling homes built by Elliott. Prestridge decided he wanted to build a house on some family property, so he approached Elliott about helping him. Elliott agreed to help Prestridge.
Prestridge and his teenage daughter moved into the house on December 21, 1999. Less than six months after moving into the home, Prestridge started noticing problems in his house; the interior doors would not stay open, the door inside of the garage leading into the house started dragging, the laminate started coming apart, the front door would not open, and hairline cracks began appearing on the outside as well as the inside of the house. As the months went by these cracks became larger and larger. Other problems also got worse. The bricks on the outside of the house started separating, the sheetrock was separating in all the rooms, the interior doors would not close unless propped open, and the track of the electric garage door came loose from the wall.
Initially, Prestridge called Elliott about the problems, who did come by the house, but he did not correct anything. Prestridge then wrote a letter to Elliott on December 18, 2000, about the problems in the home. However, Prestridge testified that he got no response. Prestridge wrote another letter on June 1, 2001, notifying Elliott about the cost to repair the home. Subsequently, Prestridge's attorney also mailed a letter by certified mail to Elliott on August 22, 2001.
Prestridge then filed suit against Elliott on September 5, 2001. He amended the petition to also name Gary Elliott Construction, Inc., as an additional defendant. Elliott denied liability on the basis that there was no contract between the parties in addition to claiming he did not receive any money for work as a general contractor on the job. Elliott filed a reconventional demand alleging his entitlement to general contractor fees and all costs of construction which Prestridge had yet to reimburse.
After trial, the trial court found that there was no contract between the parties and that Elliott had simply allowed Prestridge to use his accounts with various suppliers to secure materials at his contractors' cost. Prestridge then filed the present appeal.

CONTRACT
Prestridge first argues that the trial court erred in finding that there was no contract between him and Elliott. Prestridge argues that even if Elliott only built the house as a "friend," there was still a contract between the two parties.
"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ. Code art.1906. There are four necessary elements for a valid contract: capacity, consent, lawful cause, and object. La.Civ. Code arts.1918, 1927, 1966, 1971. Furthermore, "[a] contract is formed by the *792 consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La.Civ. Code art.1927.
There is no dispute that there is no written contract between the parties. Therefore, the question is whether there was an oral contract in which Elliott agreed to build a home for Prestridge.
Louisiana Civil Code Article 1846 regarding the proof for oral contracts provides:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
The first circuit discussed the burden of proof requirements of Article 1846 in Pennington Const., Inc. v. R.A. Eagle Corp., 94-575, p. 5 (La.App. 1 Cir. 3/3/95), 652 So.2d 637, 639 (citations omitted) as follows:
To meet the burden of proof of an oral contract by a witness and other corroborating circumstances, a party may serve as his own witness and the "other corroborating circumstances" may be general and need not prove every detail of the plaintiff's case. However, the corroborating circumstances that are required must come from a source other than the plaintiff. Whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact. Our review of factual conclusions is limited to a review of the entire record to determine if those conclusions are clearly wrong.
Prestridge testified that he and Elliott discussed building a home for Prestridge on more than one occasion. Prestridge stated that they came to an agreement that Elliott would build him a home for $75,000. Prestridge explained that Elliott supplied all of the labor and materials, including the subcontractors, and paid for them.
In support of his claim that the parties had a contract, Prestridge introduced into evidence the building permit application for the home which Gary Elliott applied for as the contractor, listing Larry Prestridge as the owner. The total cost on the permit was listed at $70,000. Also introduced into evidence was the ledger that Elliott's wife kept during the project showing the expenses that they incurred on the job which totaled $83,175.49. Elliott's wife, Charlene, testified that the cost included builder's risk insurance and liability insurance, which was confirmed by the ledger introduced into evidence. A waiver of liens was also introduced into evidence. It was signed on December 14, 1999, by Gary Elliott as the general contractor in addition to other subcontractors. A termite certificate also indicated that Gary Elliott was the general contractor on the job. Prestridge also introduced checks payable to Gary Elliott Construction, Inc.
Elliott testified that cost of the home was an issue for Prestridge, so he told Prestridge that he would do the inside wood work for free. Elliott stated that Prestridge had his own electrician but admitted he hired the other subcontractors including those who poured the slab, framed the house, installed the drywall, did the painting, and installed the roof. Elliott testified that he was doing this as a *793 favor to Prestridge and that no money went into his pocket as a profit.
In written reasons for judgment the trial court explained its reasons for finding that no contract existed as follows (emphasis supplied):
After careful consideration of the testimony of the parties, a review of the memorandums filed by counsel and the applicable law, the court finds the most likely explanation for this unfortunate circumstance is that it is simply a misunderstanding. The court finds that the plaintiff was unable to meet his burden of proof and that what happened here simply was that the defendant, Mr. Elliott, agreed to help the plaintiff build a house and in fact there was no traditional contract. The court finds the defendant, Mr. Elliott, simply allowed Mr. Prestridge to use his accounts with various suppliers to secure materials at his contractors [sic] cost. In summary the plaintiff was not able to prove that he contracted with the defendant to build the home in question.
The trial court itself recognized that there was an agreement between Elliott and Prestridge to help Prestridge build his home. While this may not have been a traditional contract in the sense that Elliott would not make a profit, the evidence is clear that there was an oral contract between the parties that Elliott would help Prestridge build a home in the $70,000 price range, satisfying all requirements necessary for the formation of a contract. Article 1910 of the Louisiana Civil Code recognizes a gratuitous contract "when one party obligates himself towards another for the benefit of the latter, without obtaining any advantage in return." The trial court erred in failing to acknowledge this fact.
As noted by the first circuit in Townsend v. Urie, 00-730 (La.App. 1 Cir. 5/11/01), 800 So.2d 11, writ denied, 01-1678 (La.9/21/01), 797 So.2d 674, the cause of a gratuitous contract is the mere generosity or liberality of the giver. Therefore, while this may not have been a traditional, onerous contract to build a home, it was a gratuitous contract to build a home. We agree with the trial court that Elliott agreed to help Prestridge build a home and find that the facts clearly establish that there was a contract between the parties.

LIABILITY
Prestridge asserted a claim under the New Home Warranty Act (NHWA), La.R.S. 9:3141, et seq. His primary claim is that his home has suffered a differential settlement of the foundation, commonly referred to as a cracked slab. Pursuant to La.R.S. 9:3150, Louisiana jurisprudence has held that the NHWA is the exclusive remedy when the cause of action arises from construction defects, violations of the building code, or poor workmanship. Thorn v. Caskey, 32,310 (La. App. 2 Cir. 9/22/99), 745 So.2d 653; Sowers v. Dixie Shell Homes of Am., Inc., 33,390 (La.App. 2 Cir. 5/15/00), 762 So.2d 186, writ denied, 00-1770 (La.9/22/00), 768 So.2d 1286. Physical damage to the foundation systems and footings is a "major structural defect" pursuant to La.R.S. 9:3143(5)(a) which is covered by the NHWA. Although, we find that there was a contract between Prestridge and Elliott, it is clear that the NHWA provides the exclusive remedy for Prestridge.
In addition to his personal observations of the defects in the home and the pictures introduced into evidence showing these defects, Prestridge introduced the testimony of Richard Primeaux, a professional engineer who inspected the home on May 19, 2001.
*794 Primeaux observed a differential settlement of the foundation around the front, west, and rear walls. He testified that the soil is a highly expansive clay that expands when it gets wet and shrinks when it dries. He further explained that without an adequate foundation to resist these pressures, it will move up and down, starting to crack the house, which is what he found occurred in Prestridge's home. After viewing recent photographs, Primeaux stated that there is a lot more cracking and a more severe separation of the brick since his visit to the home.
Primeaux opined that a foundation was not provided that would resist the movement of that soil type. He explained that different types of designs are used on this expansive clay. It was his experience that the waffle-type slab is the most effective. Primeaux testified that even with piers placed underneath the foundation before the house was built, which is what Elliott testified was done, a waffle-type slab would have prevented the problem.
In order to repair the problem, Primeaux recommended underpinning the perimeter of the house with drill piers and drilling a twelve-to-sixteen-inch hole, ten feet below the bottom of the footing, putting a three-foot square cap on the top of the drill pier and letting it cure out. He would then jack the house off of that and put permanent steel or concrete piers between the pier that was poured and the bottom of the footing. However, he stated that the entire house would now have to be underpinned since the damage is worse. He initially estimated twenty-one piers but now estimates it will take thirty-eight piers which would cost around $14,000.
N.J. Bonnette, a licensed contractor who performs house leveling, testified that he conducts the type of work that Primeaux suggested for correcting the Prestridge home defects. After viewing the house, Bonnette agreed that the house had a cracked slab. His original estimate to repair the home was $7,400, but he stated that with continued deterioration the cost would be higher now. He did think $14,000 was reasonable for the installation of thirty-eight piers.
James Moreau, a painting contractor, testified that it would cost $2,987 to repair the damage inside. It had been ten months since his estimate, so it would be an additional $700 to $1,000 to repair now. Moreau stated that he would do the work inside once the house was back in position.
No evidence was offered by Elliott to suggest that the problems with the home were caused by something other than a foundation problem. The NHWA in La. R.S. 9:3144(B)(18) does provide that:
Unless the parties otherwise agree in writing, the builder's warranty shall exclude the following items:
....
Any loss or damage to a home caused by soil conditions or soil movement if the home is constructed on land owned by the initial purchaser and the builder obtains a written waiver from the initial purchaser for any loss or damage caused by soil conditions or soil movement.
There is no evidence of a written waiver in the record. Therefore, the builder's warranty under the NHWA did cover the damage in this case. We find that Prestridge established that Elliott breached the warranty to provide a home free from a major structural defect in the home's foundation. Accordingly, Prestridge is entitled to recover from Elliott under the NHWA.
The NHWA provides that an owner has a cause of action against the builder "for actual damages, including attorney fees and court costs, arising out of the violation." La.R.S. 9:3149. Prestridge is *795 entitled to actual damages, including attorney fees and court costs. Prestridge established that it would take $14,000 to repair the foundation, $3,687 to repair and paint the inside of the home, and that he already spent $45 to repair a door. There is no doubt that Prestridge has established that he is entitled to $18,032 for the costs to repair the defects in the home. This was uncontroverted.
Prestridge also claims that he is entitled to mental anguish damages in the amount of $7,500. Following McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21 (1944), this court held that "[m]ental anguish is considered an actual or compensatory damage." Eubanks v. State, Dept. of Transp. and Dev., 620 So.2d 954, 958 (La.App. 3 Cir.), writs denied, 629 So.2d 351, 353 (La.1993).
Prestridge stated that he had been planning for several years to build a home on his family property for himself and his teenage daughter. However, Prestridge testified that his daughter, who designed her own room, is now embarrassed to bring any of her friends over. Prestridge also stated that he too is embarrassed of the home and does not want anyone to come over and see it in its present condition.
We find that Prestridge has proven he is entitled to mental anguish damages. This was supposed to be a home which would be a source of comfort for him and his daughter which is now a source of distress. We agree that an award of $7,500 is reasonable under the circumstances.
Prestridge has also requested an award of attorney fees which are permissible under the NHWA. The Louisiana Supreme Court has set forth factors to be considered in determining the reasonableness of attorney fees in Rivet v. State, Dept. of Transp. and Dev., 96-145, pp. 11-12 (La.9/5/96), 680 So.2d 1154, 1161:
(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.
Furthermore, where the record fails to disclose the exact amount of time the plaintiff's attorney spent preparing the case, the trial court may fix the amount of attorney fees based on the record. Voitier v. Church Point Wholesale Beverage Co., 99-1777 (La.App. 3 Cir 4/5/00), 760 So.2d 451, writ denied, 00-1920 (La.9/29/00), 770 So.2d 350.
It is obvious that Prestridge's attorney spent time preparing the case for trial. Several experts testified, in addition to the introduction of documents that were procured to support his position. Additionally, there was also the work on appeal which has proven successful for Prestridge. Based on the record, we find that an award of $9,000 as attorney fees is appropriate.
In addition to the above requests, Prestridge has requested that expert witness fees be taxed as court costs. Expert witnesses are entitled to be compensated for their services in an amount to be determined by the court and taxed as costs to be paid by the party cast in judgment. La.R.S. 13:3666.
Factors to be considered by the court in setting an expert witness fee include:
time spent testifying, time spent in preparatory work for trial, time spend away *796 from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Additional considerations include helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert and awards to experts in similar cases.
Hammock ex rel. Thompson v. Louisiana State Univ., 34,086, p. 11 (La.App. 2 Cir. 11/1/00), 772 So.2d 306, 314 (citation omitted).
Three experts testified on behalf of Prestridge at trial: an engineer, a house-leveling contractor, and a painting contractor. These experts stated that they visited Prestridge's home in order to assess the damage and estimate the costs to repair. Primeaux, the engineer, also presented a report which cost $250 and included the inspection and his recommendations for repairing the foundation. We find that an appropriate witness fee for the engineer would be $500, with an assessment of $250 each to the two contractors.
For the reasons discussed in this opinion, the judgment of the trial court is reversed and judgment is rendered in favor of Larry Prestridge against Gary Elliott. Prestridge is awarded $18,032 as costs to repair the defect in addition to $7,500 in mental anguish damages. Attorney fees in the amount of $9,000 is awarded. Court costs in the trial court and in the appellate court are assessed against Gary Elliott including expert witness fees of $1,000.
REVERSED AND RENDERED.