BROWN, Chief Judge.
|, The plaintiff homebuilder filed a petition seeking to recover the balance due on a construction contract. The defendants filed a reconventional demand in which they asserted a claim under the New Home Warranty Act (“NHWA”) and sought, inter alia, repair costs. After a bench trial, the court awarded plaintiff, Joe Cupit, $8,178.64 on his contractual claim, and defendants, Lyda and Isidro Hernandez, $80,000 on their NHWA claim. Costs were apportioned between the parties, and defendants were awarded attorney fees in the amount of $5,000. It is from this judgment that plaintiff, Joe Cu-pit, has appealed.

Discussion

The trial court’s factual findings in cases involving the NHWA are subject to manifest error review. Craig v. Adams Interior, Inc., 34,591 (La.App.2d Cir.04/06/01), 785 So.2d 997; Sowers v. Dixie Shell Homes of América, Inc., 33,390 (La.App.2d Cir.05/15/00), 762 So.2d 186 writ denied, 00-1770 (La.09/22/00), 768 So.2d 1286.

Notice of Defects

In his first assignment of error, plaintiff asserts that the trial court erred in failing to dismiss defendants’ reconventional demand based upon the fact that defendants did not comply with the mandatory notice requirement of the NHWA.
La. R.S. 9:3145(A) provides that: Before undertaking any repair himself or instituting any action for breach of warranty, the owner shall give the builder written notice, by registered or certified mail, within one year after knowledge of the defect, advising him of all defects, and giving the guilder a reasonable opportunity to comply with the provisions of this Chapter.
|2Absent compliance with the notice requirement set forth in La. R.S. 9:3145, recovery under the NHWA is precluded. Thorn v. Caskey, 32,310 (La.App.2d Cir.09/22/99), 745 So.2d 653; Jenkins Building Supply, Inc. v. Thigpen, 09-0903 (La.App. 1st Cir.12/23/09), 34 So.3d 867.
It is undisputed that defendants, prior to filing their reconventional demand, failed to provide plaintiff with the written notice required by La. R.S. 9:3145(A). Recently, however, several courts have held that the owners’ failure to comply with the technical requirements of La. R.S. 9:3145(A) is not necessarily fatal to their NHWA claim when they have provided actual notice of specific defects within the time limits to the builder.
In Frank v. Tran, 07-983 (La.App. 3d Cir.01/30/08), 974 So.2d 861, the home-builder sued the owner for failure to make the final two payments on the parties’ residential construction contract. In a re-conventional demand, the owner asserted, inter alia, a claim under the NHWA. The trial court dismissed the owner’s reconven-tional demand based upon its finding that the owner did not provide proper notice of the complained of defects to the builder as required by La. R.S. 9:3145(A).
In reversing the trial court, the Third Circuit found that the builder had actual written notice of the owner’s specific complaints and concerns. Therefore, strict compliance with La. R.S. 9:3145 was not required under the facts of the case. The record showed that during the home’s construction, the owner began voicing complaints. The affidavit of the vice-president of the bank which financed the construction loan for the owner also evidenced |sthat the owner made complaints during construction. Furthermore, the lender, at the owner’s request, discussed with the builder (and provided a copy of) a list of specific concerns to be corrected that the owner prepared. A similar notification of *1118 the owner’s specific concerns and complaints was sent by the owner’s attorney to the builder’s attorney. All of these communications were made during or shortly after construction. The court also observed that the builder was given an opportunity to remedy the alleged deficiencies, given that the dates of the above notifications were before he was ultimately prevented from returning to the home in April 2004.
In Barrack v. J.F. Day & Co., Inc., 07-97 (La.App. 4th Cir.08/29/07), 966 So.2d 1064, the homeowners began experiencing immediate problems with customized, specially installed windows. They notified their contractor, who contacted the manufacturer of the windows. After several repairs were unsuccessful, a senior sales representative from the manufacturer opined that while there was product design failure, there was also a problem with the installation and/or mulling by the contractor. In defending the NHWA claim filed by the owners, the contractor contended lack of notice in accordance with La. R.S. 9:3145.
The Fourth Circuit observed that not only did the owners give the contractor verbal notice of the specific defects within the statutory time limits, they allowed him several opportunities to remedy the defects. Furthermore, they provided the contractor with written notice of the specific notice prior to filing suit (although after the time limits had run). The court emphasized that the fact that the contractor notified the window | manufacturer and salespeople of the problems on numerous occasions was proof that he had notice/notification within the intendment of the statute.
In the instant case, defendants moved into the main house in June 2007; construction of the cook house was still ongoing. Almost immediately, defendants noticed problems with movement and vibration of the structure, as well as doors sticking and uneven floors. After rains in July 2007, the structure of the house shifted further and became more unstable. The Hernandezes made repeated verbal complaints about these specific problems to Cupit, who disputed that there were any problems, except with the doors. To remedy defendants’ complaints about the doors, plaintiff cut off several of the doors so they could open. Defendants continued to voice concerns about the stability of their home, and plaintiff installed diagonal and horizontal 2" x 4" braces between the support columns, but this stopped neither the vibration nor shifting of the floors. When defendants informed plaintiff that the bracing had failed to address their foundation problems, he refused to make any further efforts to address their complaints.
Defendants refused to make their final payment to plaintiff based upon their dissatisfaction with his response to their continued complaints about, inter alia, the instability of their home’s foundation. At that time, in September 2007, plaintiff refused to undertake any further repairs. Cupit filed his claim in November 2007, and the Hernandezes hired a structural engineer, Mark Thomey, to investigate the stability of their home.
Thomey inspected defendants’ home in December 2007 and took photographs of the foundation and joist structure. He also prepared a twoj¡oage5 blueprint showing how the main home’s foundation could be repaired.[1] This blueprint was attached *1119 to a letter sent by defendants’ attorney to plaintiffs counsel in December 2007, informing him that defendants had their home inspected by a structural engineer who had prepared a plan showing what needed to be done for the house to be structurally secure. Defendants offered Cupit the opportunity to undertake the repairs or to pay for defendants to have them done by another contractor. They received no response to this letter.
Thereafter, defendants filed their answer and counterclaim in June 2008. Further clarification and specification of the defects defendants sought redress for was provided to plaintiff in the pretrial statement filed on April 30, 2008, and the structural engineer’s April 16, 2009, narrative report. As noted by the First Circuit in Graf v. Jim Walter Homes, Inc., 97-1143 (La.App. 1st Cir.05/15/98), 713 So.2d 682, the NHWA was enacted to provide warranties for the purchasers and occupants of new homes in Louisiana. It was not enacted to allow a builder to shield himself from liability for numerous defects, of which he had actual knowledge and actual time to remedy, merely because the defects may not have been itemized in a timely written notice.'
As did the courts in Frank, supra, and Barrack, supra, we find that actual notice of the defects, as well as a reasonable time to remedy/repair, was provided in this case, first by repeated verbal complaints by the homeowners to the builder, and secondly by way of the letter sent by | (-.defendants’ attorney to plaintiffs counsel in December 2007, more than six months before defendants asserted their counterclaim. The fact that a very detailed and specific list of defects in the home’s foundation was not provided to plaintiff prior to suit does not prove fatal to defendants’ claim under the facts of this case. As noted above, defendants made numerous verbal complaints about foundational shifting and instability, none of which were satisfactorily addressed by plaintiff. Additionally, they gave plaintiff a more than reasonable amount of time within which he could have repaired the defects. Instead, plaintiff refused based upon defendants’ failure to pay the balance due under the construction contract. There is no merit to this assignment of error.

Applicability of La. R.S. 9:2771

In his second assignment of error, Cupit urges that the trial court erred in finding that he was not immune from liability under La. R.S. 9:2771 because he constructed the residence in accordance with specifications provided to him.
A contractor is not the guarantor of the sufficiency of plans and specifications drawn by another, and if he complies with those plans and specifications, he is entitled to immunity under La. R.S. 9:2771. Morgan v. Lafourche Recreation District No. 5, 01-1191 (La.App. 1st Cir.06/21/02), 822 So.2d 716, writ denied, 02-1980 (La.10/25/02), 827 So.2d 1156. There is no immunity, however, when a contractor does not follow plans and specifications provided to him by the homeowners. Paragon Lofts Condominium Owners Association, Inc. v. Paragon Lofts, L.L.C., 09-0943 (La.App. 4th Cir.02/10/10), 32 So.3d 303; Wilkinson v. Landreneau, 525 So.2d 617 (La.App. 5th Cir.1988).
Likewise, there is no immunity or protection under La. R.S. 9:2771 when the evidence shows that the defects were not the result of the insufficiency of plans and specifications, but were the result of the quality of the work done by a contractor. Allstate Enterprises, Inc. v. Brown, 39,467 (La.App.2d Cir.06/29/05), 907 So.2d 904; Calcasieu Parish School Board v. Lewing *1120 Construction Co., Inc., 05-928 (La.App. 3d Cir.05/31/06), 931 So.2d 492.
The record in this case supports the trial court’s finding that plaintiff is not entitled to immunity under La. R.S. 9:2771. The evidence shows that defendants provided plaintiff with: (1) a hand-drawn dimension and layout for the home, which was not to scale and did not specify method of construction, materials to be used or set forth any measurements; (2) a proposal prepared by United Bilt Homes which contained more detailed information, including a materials list.
As noted by the trial court, plaintiff was not instructed to use or follow the United Bilt Homes proposal, which did not contain plans or specs for reinforcing the concrete, set forth the number of pilings, give the dimensions of the piling holes, state how far apart to put the pilings, or provide whether or not to double the sills. The construction specifications followed by plaintiff differed in a number of ways from those set forth in the United Bilt Homes proposal, e.g., post size, floor joist size, and concrete configuration. Plaintiff came up with and followed his own plan for the Isconcrete foundation, 6x6 columns, materials, and the spacing of the substructure. Even if the United Bilt Homes proposal was considered to constitute plans or specifications under La. R.S. 9:2771, because plaintiff did not follow them, but made extensive modifications and adaptations, he is not entitled to immunity under La. R.S. 9:2771.

Evidence of Major Structural Defects

Plaintiff next asserts that there was insufficient evidence from which the trial court could have found major structural defects in the home he constructed for defendants.
La. R.S. 9:3143(5) defines “[mjajor structural defects” as:
Any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable:
(a) foundation systems and footings;
(b) beams;
(c) girders;
(d) lintels;
(e) columns;
(f) walls and partitions;
(g) floor systems; and
(h) roof framing systems.
As noted by the court in Prestridge v. Elliott, 03-94 (La.06/04/03), 847 So.2d 789, physical damage to the foundation systems and footings is a “major structural defect” pursuant to La. R.S. 9:3143(5) which is covered by the NHWA.
After hearing the testimony of both parties’ experts, the trial court found “persuasive and compelling” that of Mark Tho-mey, the structural civil engineer retained by defendants. The court observed that Thomey’s analysis |fland conclusions were consistent with the testimony of defendants regarding the movement of their home.
Mark Thomey testified that he examined the home, completed a computer model of the construction, and performed an analysis of the structures with computer software. Thomey testified that some of the loads or structure members were twice what they were designed for. He described the floor joists as adequate but the floor beams or supports as inadequate. According to Thomey, these floor beams needed to be doubled.
While Thomey found the size of the 6 x 6 posts to be adequate, he described the method of their support as inadequate. *1121 Thomey opined that Cupit’s design would allow the concrete to separate from the posts which would cause the posts to sink further.
Thomey performed an excavation below one post which revealed that there was no concrete below or around that particular post, only above ground where the 2x4 forms had been used to build the linear concrete slabs. Thomey also observed cracking and separating of the concrete around another post, which indicated that the concrete was poured only above ground. According to Thomey, even if plaintiffs specifications for depth and width of concrete were met, the foundation would still be inadequate.
Thomey also found the following structural deficiencies upon visual inspection: inadequate embedment and encasement of the 6x6 timber columns; incorrect installation/use of light gauge, steel joist hangers; insufficient nailing of joint-to-beam connections; and insufficient nailing of beam-to-column connections.
110Thomey applied the 2001 National Design Standard for timber framing in discussing his engineering analysis/code check of the structure members, and opined that, “The results of the analysis and code check showed that the primary 2 x 12 floor beams were significantly overstressed, and that the lateral displacement of the entire structure, as originally constructed, would have led to a partial, if not global, collapse of the structure.”
In light of the overwhelming testimony by Mark Thomey regarding the deficiencies in both the support systems (floor beams) and the foundation of the home constructed by plaintiff, both of which are major structural defects as defined by La. R.S. 9:3143(5), the trial court did not err in finding that these defects were the result of the quality of the workmanship of plaintiff and they made defendants’ home unsafe, unsanitary or otherwise unlivable.

Amount of Damages

Plaintiff contends that the trial court erred in awarding defendants $80,000 as the reasonable cost of repair or replacement necessary to cure the defects. Cupit’s primary complaint is that this amount includes an estimate for repair of the cook house, which was not analyzed or inspected by defendants’ structural engineer.
General Contractor Mark Holyfield provided an estimate of the cost, of the structural repairs recommended by Mark Tho-mey. The total cost of labor and materials for the three studios was $62,703.60. Including the cook house, Holyfield projected a total estimate of $80,000 for all four buildings.
| nWe find no abuse of the trial court’s discretion in this case. The trial court did not award any amounts to defendants for “cosmetic deficiencies” (such as warping and separating of handrails and posts, inadequate painting and sealing of exposed framing and decking) based upon its finding that defendants offered inadequate proof of such defects. Instead, the court limited its award to $80,000, which we find to be reasonable based upon the evidence in this case.

Attorney Fees

Finally, plaintiff takes issue with the trial court’s award to defendants of attorney fees in the amount of $5,000. According to plaintiff, there was insufficient evidence to support this award.
A reasonable attorney’s fee is determined by the facts of an individual case. Filson v. Windsor Court Hotel, 07-0755 (La.App. 4th Cir.07/23/08), 990 So.2d 63; Gottsegen v. Diagnostic Imaging Services, 95-977 (La.App. 5th Cir.03/13/96), 672 So.2d 940, writ denied, 96-0707 (La.04/26/96), 672 So.2d 909. The trial *1122 court has discretion to determine the amount of an attorney’s fee based upon the court’s own knowledge, the evidence, and the court’s observation of the case and the record. Custom-Built Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La.App.2d Cir.12/08/99), 748 So.2d 594; Filson, supra. A court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered. Filson, supra; Burford v. Burford, 95-2318 (La.App. 1st Cir.06/28/96), 677 So.2d 722.
|iaBased upon the facts of this case, we can not say that the trial court abused its discretion in awarding defendants attorney fees of $5,000. The record reflects time spent preparing pleadings, getting ready for trial, and the trial itself. There were expert witnesses, detailed exhibits and extensive testimony by the parties. This assignment of error is without merit.

Conclusion

For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs of this appeal are to be borne by plaintiff-appellant, Joe Cupit.

. There was no separate schematic drawing of the cook house since it was constructed with a similar foundation.