# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1028



**MARY P. OGEA**

**VERSUS**

**TRAVIS MERRITT AND MERRITT CONSTRUCTION, LLC**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-2321
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.


**AFFIRMED AS AMENDED.**

**Richard D. Moreno**
**RICHARD D. MORENO, L.L.C.**
**P.O. Box 149**
**Lake Charles, LA 70602-0149**
**(337) 656-8654**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Travis Merritt**
    **Merritt Construction, LLC**

**Benji J. Istre**
**BENJI J. ISTRE, LLC**
**P. O. Box 12576**
**Lake Charles, LA 70612-2576**
**(337) 274-7208**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Mary P. Ogea**

**PICKETT, Judge.**

Limited liability company and its sole member appeal judgment holding them solidarily liable for damages arising from their construction of the plaintiff's home. For the reasons discussed below, we amend and affirm.

**FACTS**

In February 2007, Mary P. Ogea signed a "Custom Home Building Agreement" with Merritt Construction, LLC (Merritt LLC), contracting Merritt LLC to build a home on a lot she owned near Lake Charles. Travis Merritt, the sole member of Merritt LLC, signed the contract on behalf of the company. During construction, Ms. Ogea became aware of problems with the construction. After being made aware of a problem with the slab of the home, she hired Charles Norman, an engineer, to inspect her home. Mr. Norman performed inspections in September 2007, November 2007, and May 2011. Based on Mr. Norman's findings during his first two visits and his expert opinion regarding the slab, Ms. Ogea notified Merritt LLC in January 2008 of the problems with the slab and requested a refund of all monies she had paid and demolition of the unfinished home.

Receiving no response from Merritt LLC, Ms. Ogea filed suit in April 2008 against Merritt LLC and Mr. Merritt (the defendants), alleging violations of the New Home Warranty Act (NHWA), La.R.S. 9:3141-3150, and various Louisiana Civil Code articles related to construction defects. Mr. Travis filed a Peremptory Exception of No Cause of Action, which the trial court denied after a hearing. The defendants then filed an Answer and Reconventional Demand. Thereafter, counsel for the defendants withdrew as counsel.

On October 5, 2011, a bench trial was held. Mr. Merritt represented himself and Merritt LLC at trial. Mr. Norman, Ms. Ogea, and Mr. Merritt testified at the

trial. At the conclusion of the trial, the trial court found that Merritt LLC and Mr. Merritt each met the definition of "builder" under the NHWA and that based on Mr. Norman's expert testimony, there was a slab defect, that constituted a "major structural defect" under the NHWA, which created other "significant" problems with the construction. The trial court further determined that "[u]nder one or more of the [legal] theories," the damages alleged by Ms. Ogea were caused either by Merritt LLC or Mr. Merritt or both. Specifically as to Mr. Merritt, the trial court found that he personally performed the work for the pad of the home and that his failure to provide proof of insurance, as requested, constituted fraud. Based on these findings, the trial court held Mr. Merritt personally responsible and solidarily liable with Merritt LLC for damages Ms. Ogea incurred as a result of the defective construction.

The trial court granted judgment in favor of Ms. Ogea awarding her: (1) $221,262.11 for monies she paid prior to the date of trial with judicial interest from the date of judicial demand; (2) $16,105.00 for demolition costs with legal interest from the date of judgment; (3) $15,500.00 for attorney fees with legal interest from the date of judgment; (4) $3,050.00 for expert fees with legal interest from the date of judgment; and (5) cancellation of the lien filed by Merritt LLC. The trial court also granted judgment in favor of Merritt LLC on its Reconventional Demand in the amount of $8,800.00 with legal interest from date of judicial demand as an offset against Ms. Ogea's judgment. The judgment cast Merritt LLC and Mr. Merritt in solido for all costs of the proceedings.

In finding Mr. Merritt personally liable, the trial court explained:

> "[E]ither Travis Merritt and/or Merritt Construction, LLC, in the handling of the pouring of the slab, since that [is]. . . the main defect . . . . It was the job of Merritt Construction, whether it was poured by them or not, to oversee and make sure that it was done within the standards that would be expected under the law."

2

After the trial court stated its reasons for judgment, Ms. Ogea asked the trial court to address her request that Mr. Merritt be found to have perpetrated fraud on her. The trial court explained, "when I indicated he would be personally held responsible and by the dilatory actions, as well as the non-compliance with the depositions and other matters, it's the Court's position from a civil standpoint that he has committed fraud."

After judgment was signed, the defendants filed a timely Motion for New Trial which the trial court denied after a hearing. The defendants appealed.

## ASSIGNMENTS OF ERROR

In their appeal, the defendants assign the following errors with the trial court's judgment:

1. The trial court erred by denying the Peremptory Exception of No Cause of Action filed by Mr. Merritt, individually.

2. The trial court erred by rendering Judgment against Mr. Merritt, individually and in solido with Merritt LLC.

3. The trial court erred by rendering judgment against Mr. Travis and Merritt LLC under the NHWA.

4. In its judgment, trial court erroneously awarded damages that were not allowed by law, were not sustained by the evidence, or were duplicative.

5. The trial court erred in awarding $8,800.00 with legal interest from date of judicial demand in favor of Merritt LLC on its Reconventional Demand.

6. The trial court erred in awarding $15,500.00 in attorney fees to Ms. Ogea.[1]

7. The trial court erred by failing to award Merritt LLC reasonable attorney fees under its contract with Ms. Ogea for investigation, filing an answer, and prevailing on its Reconventional Demand.

## DISCUSSION

---

[1] This assignment of error has been corrected to reflect that the trial court awarded Ms. Ogea $15,500.00 in attorney fees, not $16,000.00 in attorney fees as the defendants stated in their assignment of error.

At the heart of Mr. Merritt's appeal are the NHWA and the law governing limited liability companies (LLC). The NHWA provides mandatory warranties in favor of purchasers or occupants of new homes. The warranties apply to all defects "although there is no building standard directly regulating the defective workmanship or materials." La.R.S. 9:3140. The remedies provided in the NHWA are exclusive, and no other remedies provided by law apply between an owner and a builder. La.R.S. 9:3141.

Louisiana's LLC law benefits its members by limiting their liability. The limited liability of LLC members to third parties is provided in La.R.S. 12:1320 which states:

> A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
>
> B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
>
> C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.
>
> D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

### Peremptory Exception of No Cause of Action

In their first assignment of error, the defendants argue that the trial court erred in denying Mr. Merritt's exception of no cause of action. In his exception, Mr. Merritt asserted that Ms. Ogea's contract was with Merritt LLC and that

Merritt LLC performed all the work on her home. He contends that under general corporate law, there is no basis for him, as a member of an LLC, to be personally liable for the debts of the LLC. He further asserts on appeal that Ms. Ogea did not allege in her petition that he committed fraud with regard to the slab; therefore, he contends no basis exists in the petition to pierce the corporate veil and hold him personally liable to her.

Appellate courts review the denial of an exception of no cause of action de novo on appeal to determine "whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief." *ARC Indus., L.L.C. v. Nungesser*, 11-331, 11-332, p. 3 (La.App. 3 Cir. 10/5/11), 74 So.3d 864, 867. No evidence can be introduced regarding an exception of no cause of action. La.Code Civ.P. art. 931. The defendant must prove that the well-pleaded allegations contained in the petition, when accepted as true, do not show the plaintiff is entitled to the relief she seeks. *Taylor v. Leger Constr., LLC*, 10-749 (La.App. 3 Cir. 12/8/10), 52 So.3d 1098.

In her petition, Ms. Ogea alleges that there are numerous defects with the concrete slab and foundation of her home caused by poor drainage and substandard workmanship, that Mr. Merritt "performed the dirt work for the foundation of the home," that Mr. Merritt failed to complete several items according to the specifications for her home and altered or added other items at his own discretion without her permission, that Mr. Merritt is liable to her for "constructing the home in a substandard workmanlike manner," and that Mr. Merritt "is personally responsible to [her] for all damages because he personally performed work in the construction of the home and supervised all aspects of the home." In her petition, Ms. Ogea also asserts that she discussed with Mr. Merritt complaints she had with

the construction, e.g., failure to complete several items in the blue prints according to the specifications therein, but he refused to address them.

The defendants contend that the trial court's denial of Mr. Merritt's exception ignores the basic premise of personal immunity for corporate shareholders except in very limited circumstances. Further, they assert this case is not one of those limited circumstances. In support of their argument, the defendants direct us to *Curole v. Ochsner Clinic, L.L.C.*, 01-1734, pp. 7-8 (La.App. 4 Cir. 2/20/02), 811 So.2d 92, 97, where the court concluded that "[t]o have meaning within the entire statute, the phrase 'or other negligent or wrongful act by such person' must refer to acts done outside one's capacity as a member, manager, employee, or agent of the limited liability company." The defendants urge that Mr. Merritt's alleged acts of negligence were not within the scope of subsection (D) because all the work he performed was to fulfill Merritt LLC's contractual obligations to Ms. Ogea. They conclude that because any negligence or wrongful acts by him were not "outside" his capacity as a member of Merritt LLC, he cannot be held personally liable for those acts.

To decide this issue, we begin with the LLC law which defines a limited liability company as an unincorporated association, not as a corporation. La.R.S. 12:1301(10).[2] Next, we see that La.R.S. 12:1320, which is entitled "Liability to third parties of members and managers," contains three very important limitations.

First, the liability of LLC members is governed "*solely* and *exclusively* by the provisions of *this Chapter*." La.R.S. 12:1320(A) (emphasis added). Second, no member of an LLC is liable for the debt of the LLC, "[e]xcept as otherwise *specifically* set forth in *this Chapter*." La.R.S. 12:1320(B) (emphasis added).

---

[2] After defining "limited liability company", the legislature mandates: "No limited liability company organized under this Chapter shall be deemed, described as, or referred to as an incorporated entity [or] corporation." La.R.S. 12:1302(10).

6

Lastly, "Nothing in the [LLC law] shall be construed as being in derogation of any rights which any person may have against" an LLC member for "fraud . . . [or] any breach of professional duty or other negligent or wrongful act by such person." La.R.S. 23:1320(D).

> When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written, and no further interpretation may be made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. Unequivocal provisions are not subject to judicial construction and should be applied by giving the words their generally prevailing meaning. La. C.C. art. 11; La.R.S. 1:3; *Oubre v. Louisiana Citizens Fair Plan*, 11-0097, p. 12 (La.12/16/11), 79 So.3d 987, 997. Further, laws on the same subject matter are to be interpreted in reference to each other. La. C.C. art. 13.

*Duckworth v. La. Farm Bureau Mut. Ins. Co.*, 11-2835, p. 6 (La. 11/2/12), ___ So.3d ___, ___.

The LLC law defines an LLC as an unincorporated association, not as a corporation, and specifically provides that LLC members are liable for their own negligent or wrongful acts. It further specifically limits the parameters for deciding the liability of an LLC member to the LLC law itself, thereby precluding consideration of other laws that may be similar in some way. We conclude, therefore, that the legislature intended for the personal liability of LLC members of LLCs to be different from the personal liability of corporate shareholders. In our view, the legislature limits the personal liability of an LLC member for the debts, obligations, or liabilities of the LLC *unless* the debt, obligation, or liability at issue is the result of the member's own personal actions as specified in La.R.S. 12:1320(D). *See Matherne v. Barnum*, 11-827 (La.App. 1 Cir. 3/19/12), 94 So.3d 782, *writ denied*, 12-865 (La. 6/1/12), 90 So.3d 442; *W.J. Spano Co., Inc. v. Mitchell*, 05-2115 (La.App. 1 Cir. 9/15/06), 943 So.2d 1131; *Regions Bank v. Ark–*

*La–Tex Water Gardens, L.L.C.,* 43,604 (La.App. 2 Cir. 11/5/08), 997 So.2d 734, *writ denied,* 09-16 (La. 3/13/09), 5 So.3d 119.

In *Matherne*, 94 So.3d at 788 (footnotes omitted), the court reasoned:

> Without a doubt, statutory law found in La. R.S. 12:1320(B) insulates a member of a limited liability company from personal liability for a debt or obligation of the limited liability company. However, Subsection D of this same statute clearly provides a cause of action against a member of a limited liability company because of any breach of professional duty, as well as for any fraud or other *negligent* or wrongful act by such person. *W.J. Spano Co., Inc. v. Mitchell,* 2005–2115 (La.App. 1st Cir.9/15/06), 943 So.2d 1131, 1132–33. Thus, members of limited liability companies generally may not be assessed with personal liability for the debts and obligations of their limited liability company to third parties, *unless there is proof of negligence* or wrongful conduct by that person. *Regions Bank v. Ark–La–Tex Water Gardens, L.L.C.,* 43,604 (La.App.2d Cir.11/5/08), 997 So.2d 734, 740, *writ denied.* 2009–0016 (La.3/13/09), 5 So.3d 119. Whether a contractor has properly performed an obligation is a question of fact. *Imperial Chemicals [Ltd. v. PKB Scania (USA), Inc.*, 04-2742 (La.App. 1 Cir. 2/22/06), 929 So.2d 84, *writ denied*, 06-665 (La. 5/26/06), 930 So.2d 31.] To encourage commerce, the legislature has limited personal liability for some debts incurred or acts performed on behalf of business entities. However, La. R.S. 12:1320 was not intended to shield professionals from liability for personal negligence. *Regions Bank,* 997 So.2d at 740.

The defendants argue that Mr. Merritt should be treated differently from the defendant members in *Matherne*, *Spano*, and *Regions Bank* because he is not a professional. This argument fails. Section D specifically references "any breach of professional duty" and "any . . . other negligent or wrongful act" by a member. Furthermore, Section D makes no distinction between professional members and non-professional members.

Accepting as true Ms. Ogea's allegations that Mr. Merritt engaged in acts that were negligent with regard to the construction of her home, we find the petition states a cause of action against him under La.R.S. 12:1320(D). Accordingly, the trial court did not err in denying Mr. Merritt's Exception of No Cause of Action.

8

On appeal, Mr. Merritt also argues that pursuant to La.R.S. 12:1320(C), the claims against Merritt LLC and Mr. Merritt cannot be presented in the same suit. This argument is the substance of an exception of improper cumulation of actions, which must be presented in the form of a dilatory exception. La.Code Civ.P. art. 926(A). Objections that can be raised in a dilatory exception are waived if not so plead. La.Code Civ.P. art. 926(B). No dilatory exception was filed herein; therefore, Mr. Merritt's objection to claims being prosecuted against him and Merritt LLC in one suit was waived and will not be addressed here.

*Mr. Merritt's Personal Liability*

Mr. Merritt does not assign error with the trial court's factual finding that he was negligent in the work he performed on Ms. Ogea's house. Therefore, as discussed above, we find no error with the trial court's assessment of personal liability to Mr. Merritt. Mr. Merritt also does not assign error with the trial court's finding that he committed fraud when he represented to Ms. Ogea that Merritt LLC had insurance but failed to produce proof of such insurance. Accordingly, fraud is another basis for Mr. Merritt's personal liability.

*Liability under the NHWA*

Ms. Ogea notified the defendants by certified mail of her complaints and the defects she discovered in her home. In her letter, she informed the defendants that the home was uninhabitable and that she wanted it demolished. The defendants argue the letter denied them the right to repair Ms. Ogea's home as required by the NWHA. They contend that the letter did not offer Merritt LLC an opportunity to return to the job site to inspect and repair the alleged defects but foreclosed that possibility. This argument is premised on the sentence in Ms. Ogea's letter which states: "[Ms. Ogea] does not wish or intend to live in this house" and the lack of a time frame within which to address her complaints.

9

This issue was not presented at trial. Uniform Rules, Courts of Appeal, Rule 1-3 states that issues not submitted to the trial court are not generally reviewable on appeal, "unless the interest of justice clearly requires otherwise." Mr. Merritt represented himself and Merritt LLC at trial; therefore, we review this issue in the interest of justice.

In her petition, Ms. Ogea asserted that she discussed with Mr. Merritt various complaints that she had with the home, but he refused to address them. She reiterated these complaints in her testimony. Ms. Ogea's attorney outlined the defects Mr. Norman identified with the slab of the home in a letter to Mr. Merritt's counsel. The letter concluded:

> As Mr. Norman indicates in his report, it is possible to attempt to make repairs to the slab by underpinning it around the perimeter to stabilize it. However, he advised that, at best, it could only be stabilized and that it could not be leveled to the original level. This would result in a home that would be stabilized, but unlevel. This means Ms. Ogea would constantly have problems with cabinet doors, doorways, moldings, doorframes, etc. . . . due to the slab and foundation not being level, which is unacceptable to her in a new home.
>
> In light of the multiple problems described above with the foundation and slab of the home, it is sub-standard in quality and is unacceptable to Ms. Ogea. She does not wish or intend to live in this home because of the substandard quality and demands that she be refunded her money and the home be destroyed.
>
> Please forward this to your insurance carrier and ask that they contact me within 30 days in an attempt to resolve this. If we have not heard a response in that time, we will be forced to file a lawsuit shortly thereafter.

Ms. Ogea urges that her letter satisfies the requirements of Section 3145. She testified that before she knew the slab was a problem she had complained to Mr. Merritt about other work that was done improperly or items that needed repair and that he refused to address her complaints, including his failure to build some items in the home according the blue print specifications. Additionally,

10

Ms. Ogea's letter related Mr. Norman's opinion that while the slab could possibly be repaired, such repair would only result in the slab being stabilized, but the slab would not be level. Therefore, the problems with the home functioning properly would not be resolved because Ms. Ogea would continuously have problems with cabinet doors, doorways, etc. being unlevel. Mr. Norman clarified at trial that it would be more cost effective to destroy the home and rebuild it than attempt to repair it.

In *Graf v. Jim Walter Homes, Inc.*, 97-1143, p. 5 (La.App. 1 Cir. 5/15/98), 713 So.2d 682, 687 (emphasis added), the first circuit explained that the NHWA "was enacted to provide warranties for the purchasers and occupants of new homes in Louisiana. It was not enacted to allow a builder to shield himself from liability for numerous defects, which he had *actual knowledge and actual time to remedy*, merely because the defects may not have been itemized in a timely written notice." We agree with Ms. Ogea that her letter did not preclude Merritt LLC an opportunity to repair. Ms. Ogea notified Merritt LLC of her complaints and did not file suit for more than three months thereafter. She did not reject any requests to inspect the slab to determine the veracity of Mr. Norman's opinion that the slab could not be satisfactorily repaired to remedy the problems he identified, nor did she refuse any attempt to address her complaints. Moreover, she never performed any work on the slab that denied the defendants the opportunity to repair the slab. Another consideration here is that the law does not require one to do a vain and useless thing. *Tarver v. Martin*, 322 So.2d 829 (La.App. 3 Cir.); *writ denied*, 323 So.2d 468 (La.1975); *Kern v. River City Ford, Inc.*, 98-407 (La.App. 1 Cir. 2/19/99), 754 So.2d 978. Allowing Mr. Merritt an opportunity to repair the slab would have been a vain and useless act because it could not be repaired to remedy all the problems that resulted from its defects. Mr. Norman testified that the

problems which could not be repaired, e.g., the slab being unlevel, would continue to worsen with time. His testimony was unrefuted.

Accordingly, we find that Ms. Ogea did not refuse Merritt LLC and/or Mr. Merritt the opportunity to repair the slab. Furthermore, we find that on the record before use, allowing the defendants the opportunity to repair the slab would have been a vain and useless act which the law does not require.

### Was Mr. Merritt a "Builder" as defined by the New Home Warranty Act?

Mr. Merritt argues that the trial court erred in finding him personally to be a "builder" under the NHWA. We need not address this assignment because Mr. Merritt's personal liability arises from his personal negligence as a member of Merritt LLC; therefore, whether he personally meets the definition of builder under the NHWA has no bearing on his liability.

### Building Standards

Mr. Merritt argues Ms. Ogea failed to prove that he and/or Merritt LLC failed to comply with building standards as required in La.R.S. 9:3144. Mr. Norman testified:

> We specifically found that the grade beam was inadequate, that it was much thinner, or less in height required by minimum requirements for good building practices, for code, any code you want to pick. I picked the International Building Code [IBC]. You can use the Southern Building Code, or the Uniform Building Code. That footing, that grade beam, the perimeter footing, is not adequate for good building design and to support the foundation underneath this house.

A similar argument was rejected in *Thorn v. Caskey*, 32,310 (La.App. 2 Cir. 9/22/99), 745 So.2d 653, where the defendant argued that the plaintiffs failed to meet their burden of proof because the building code relied on by the plaintiffs' expert was not introduced at trial. In *Caskey*, the plaintiffs' expert testified that the defendant's work did not comply with the Southern Building Code because he

12

used 2x6's in the ceiling joists instead of 2x8's. The court held that although the code was not introduced into evidence, the expert's testimony satisfied the requirements of the NHWA. The court did not state that the expert identified the specific standard in the Southern Building Code that was not met; rather, it stated the expert testified why the specification was not met.

Mr. Norman did the same as the expert in *Caskey*, when he explained "the grade beam was inadequate . . . it was much thinner, or less in height required by minimum requirements for good building practices, for . . . any code." He then enumerated three codes under which the grade beam did not meet building standards. For these reasons, we find no error with the trial court's finding that Ms. Ogea proved the construction of the slab violated of that code, despite the failure to introduce the actual document.

### Damages

Mr. Merritt next argues that the trial court awarded Ms. Ogea damages that are not allowed by law, are not sustained by the evidence, or are duplicative. At the conclusion of the trial, the trial court stated that Ms. Ogea's "total amount of losses including the home and consequential damages, was $261,495.40," then instructed Ms. Ogea's attorney to "compute that amount less any appliance expenditures, less any floor expenditures, less any bath accessories, less any hardware finish," noting the contract specifically excludes these items. The trial court also instructed that demolition costs of $18,605.00 be reduced by $2,500.00 for the cost of the driveway because the driveway was also excluded from the contract. Lastly, the trial court ordered that the final payment of $8,800.00 owed by Ms. Ogea to Merritt LLC be deducted from the total losses and consequential damages. The judgment in favor of Ms. Ogea awards her $221,262.11 in damages.

Under the terms of the construction contract, Ms. Ogea was responsible for water, gas, sewer, electric utilities, and insurance. The contract expressly excluded appliances, flooring and baseboards, all cabinets, countertops, and shelving units or built-ins, landscaping, driveways and dirt work associated with driveways, and hardware finish.[3] The defendants argue that the trial court awarded Ms. Ogea damages for a number of items that would be usable even if the house were demolished. Specifically, the defendants assert the following amounts were erroneously included in the amount awarded to Ms. Ogea:

| | |
|---|---|
| $ 2,968.50 | warranty and price for refrigerator, range, dish washer, icemaker, hose, tubing, and cord |
| 5,272.00 | air conditioner |
| 5,194.05 | homeowners' insurance |
| 622.00 | flood insurance, despite the fact that as a homeowner, she would bear these costs because she had the insurable interests in the home. |
| 10,169.00 | "Felix Driveway and Terrace" |
| 930.00 | water |
| 4,549.87 | electric |
| 13,200.00 | rent |
| 28.06 | taxes |
| 90.00 | "water leak from meter" |
| 88,870.34 | mobile home |
| $131,893.82 | |

Section 3144 of the NHWA delineates damages that are excluded under the Act. A number of those exclusions are applicable here and, therefore, affect the damage awards made by the trial court, specifically:

---

[3]The contract defines "hardware finish" to include "knobs, pulls, hinges, catches, locks, drawer slide accessories or other items that are normally installed subsequent to final painting."

(4) Any damage to the extent it is caused or made worse by any of the following:

   (a) Negligence, improper maintenance, neglect or improper operation by anyone other than the builder or any employee, agent, or subcontractor of the builder.

   . . . .

(5) Any loss or damage which the owner has not taken timely action to minimize.

   . . . .

(14) Bodily injury or damage to personal property.

(15) Any cost of shelter, transportation, food, moving, storage, or other incidental expense related to relocation during repair.

(16) Any defect not reported in writing by registered or certified mail to the builder or insurance company, as appropriate, prior to the expiration of the period specified in Subsection A of this Section for such defect plus thirty days.

(17) Consequential damages.

   . . . .

(19) Mold and mold damage.

La.R.S. 9:3144.

In light of provisions (4)(a), (5), and (19), we find that the air conditioner, homeowners' insurance, flood insurance, and electricity were expenses to preserve the home and prevent deterioration of the structure; therefore, they are recoverable. The appliances and warranty expenses were excluded by the contract and specifically excluded by the trial court from Ms. Ogea's calculation of her damages. The defendants have not shown these expenses were not subtracted from Ms. Ogea's calculation of damages in the trial court's damage award. Accordingly, we need not address them. The driveway expense must also be excluded for the same reasons; however, the trial court did not order that it be excluded. Therefore, we exclude it now.

15

We note that while the contract did not exclude the terrace, a front porch was specifically included in the contract. Additionally, the cost for the driveway and terrace are stated as one price. For these reasons, the total cost of $10,169.00 for the driveway and terrace must be deducted. We find that the costs for water, taxes, and a water leak are consequential damages which are excluded under Section 3144(17). The cost of shelter related to relocation during repair is specifically excluded. La.R.S. 3144(15). Therefore, we also find that the rent Ms. Ogea paid and the cost of the mobile home she purchased are damages excluded by this section and are duplicate damages because Ms. Ogea's damage award refunds all the monies she paid the defendants.

For these reasons, we amend the trial court's damage award of $128,302.71 as follows:

$221,262.11
- 10,169.00  driveway and terrace
- 13,200.00  rent
- 88,870.34  mobile home and associated expenses
-      930.00  water
-        28.06  taxes
-        90.00  water leak
$128,302.71

### *Reconventional Demand Award*

The defendants seek an increase in the damages the trial court awarded on Merritt LLC's reconventional demand from $8,800.00 to $8,805.00, the amount plead in its reconventional demand, and to increase the interest rate from legal interest to 12%, the rate provided in the contract. In the reconventional demand, the defendants alleged that Ms. Ogea owed $8,805.00 together with legal interest.

16

Accordingly, we amend the judgment to increase the award from $8,800.00 to $8,805.00. Merritt LLC sought to recover legal interest, not 12% interest as provided in the contract; therefore, we find the trial court did not err awarding legal interest.

***Attorney Fees***

    ***Ms. Ogea's Award***

The defendants urge that the trial court's award of attorney fees is too high. The NHWA allows an owner to recover for "actual damages, including attorney fees and court costs, arising out of" a builder's violation of the warranties it provides. La.R.S. 9:3149(A). The judgment awards Ms. Ogea $15,500.00.

Whether an award for attorney fees is reasonable is based upon the facts of the case before the court. *Cupit v. Hernandez*, 45,670 (La.App. 2 Cir. 9/29/10), 48 So.3d 1114, *writ denied*, 10-2466 (La. 12/17/10), 51 So.3d 7. "The trial court has discretion to determine the amount of an attorney's fee based upon the court's own knowledge, the evidence, and the court's observation of the case and the record." *Id.* at 1121-22. Specific evidence of hours worked or hourly rates charged is not required because the trial court often knows or has a good idea of time spent on pre-trial issues and because the record also indicates the services rendered by counsel. *Id.*

The trial court's reasons for ruling show that it was familiar with the issues presented by this case and with the specific pre-trial work performed by Ms. Ogea's counsel to address at least some of the issues, e.g., insurance coverage. Specifically, the trial court observed the recalcitrance of Mr. Merritt to cooperate with discovery requests and in his deposition on this issue. We find no error with the trial court's award of $15,500.00 in attorney fees.

*Merritt LLC's Award*

Citing a provision in Ms. Ogea's contract, the defendants seek an award of attorney fees with legal interest from the date of judgment for investigation of the matter, filing an answer and successful Reconventional Demand and for pursuing this appeal. The cited provision reads, in pertinent part: "the prevailing part shall be entitled to an award of reasonable attorney fees." Merritt LLC alleged entitlement to attorney fees in its Reconventional Demand. However, no evidence of attorney fees incurred by the defendants in connection with this matter is in the record, and Mr. Merritt represented himself and Merritt LLC at trial.

One who represents himself is not entitled to recover attorney fees because he has not incurred that expense. *Lambert v. Byron*, 94-854 (La.App. 3 Cir. 2/8/95), 650 So.2d 1201. Accordingly, Mr. Merritt and/or Merritt LLC can only recover attorney fees paid to counsel. No evidence of attorney fees incurred for representation before trial or of actual work performed by counsel who represented the defendants prior to trial is in the record. Without knowledge of the work performed by counsel in the trial court, no award can be made for such fees.

We must now determine whether the defendants are entitled to attorney fees for the work performed on appeal. A prevailing party is defined, in part, by Black's Law Dictionary, 1069 (5th ed. 1987), as "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue." The defendants prevailed in having their Reconventional Demand damage award slightly increased and in having Ms. Ogea's damage award significantly reduced. Accordingly, we award $1,500.00 in attorney fees to the defendants.

**DISPOSITION**

For the reasons stated, the judgment of the trial court is amended to reduce the award of general damages from $221,262.11 to $128,302.71 and to award Merritt LLC and Travis Merritt attorney fees in the amount $1,500.00, together with interest thereon from the date of this opinion. The judgment is affirmed in all other respects. All costs of this appeal are assessed to Merritt LLC and Travis Merritt.

**AFFIRMED AS AMENDED.**