807 So.2d 987 (2002)
David STOKES and Nancy Stokes
v.
OSTER DEVELOPMENT, INC. and Zurich American Ins. Co.
No. 01-CA-780.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
*988 Robert M. Johnston, New Orleans, LA, Attorney for Appellants.
Sharon D. Smith, Michelle L. Corrigan, New Orleans, LA, Attorneys for Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Plaintiffs David and Mary Stokes (Stokes) appeal a summary judgment in favor of Oster Development Inc. (Oster), dismissing their suit for damages. We affirm.
The Stokes' filed a petition against Oster and its insurer, alleging that the parties had entered into a construction contract for a residence in Metairie, Louisiana, for the sum of $570,000.000. The petition stated that the Stokes moved into the home in October, 1996, and that on or about February 13, 2000, the Stokes learned that the synthetic stucco (EIFS) installed on the exterior of their home had trapped moisture. It was alleged that the moisture caused damage, including rotting and decay of adjacent interior wooden structures, and caused the growth of dangerous mold and fungi. Because of the damage, the Stokes' asserted that it was necessary to remove the entire exterior of the house and replace it with a different type of exterior, and that the repair work cost them $77,687.00. They sued for damages for breach of contract and negligence, urging that Oster had installed defective and unsuitable materials, and negligently designed and constructed the home. Oster filed an answer, and subsequently filed a Motion For Summary Judgment, asserting that the New Home Warranty Act (NHWA) provides the exclusive remedies against home builders in Louisiana, and that the Stokes had failed to comply with the Act. Specifically, it was alleged that they failed to notify Oster of any defects before undertaking repairs, and consequently, recovery under the NHWA was precluded.
Following the submission of memoranda and argument of counsel, the trial court granted the motion and dismissed the claims. It is from this judgment that the Stokes' appeal is taken.
At the trial, Oster submitted the affidavit of its president, Donald Oster, who stated that in February of 2000, he received a telephone call from Mr. Stokes informing him that damages to the EIFS installed during the original construction were evident, and requesting that he contact his insurer about paying for damages to the home. Following the call, Mr. Oster visited the Stokes' residence to inspect the damages and learned that the repairs to the home had already commenced. Mr. Oster stated that neither he nor Oster Development had received any written notification of any defects prior to the undertaking of repairs to the original EIFS, and that he was not given a reasonable opportunity to repair the alleged defects.
In opposing the motion, David Stokes filed an affidavit alleging that on March 9, 1995, prior to completion of the home, he read an article in the Times-Picayune stating that synthetic stucco traps moisture and causes wood framed walls to rot. After reading the article, he sent a letter *989 dated March 12, 1996, to Mr. Oster setting a meeting to see if any specific changes needed to be made to protect against the moisture problem discussed in the article. According to Mr. Stokes, Mr. Oster refused to replace the EIFS and stated that he had constructed several other homes using the material with no moisture problems reported. Mr. Stokes requested, and Mr. Oster agreed, that Oster would perform independent tests on three of the other homes. Mr. Stokes stated that on March 21 1996, he sent another letter to Mr. Oster asking for the test results showing no moisture penetration, and requested that Oster provide a corporate guarantee that any damages caused by installation of the EIFS would be paid by Oster, including replacement of an alternative type exterior. Mr. Stokes averred that Mr. Oster refused to provide either the specific test results or the corporate guarantee. On April 9, 1996, another letter was sent to Mr. Oster requesting a response to the earlier letter, who replied that any damages occurring as a result of the installation of the EIFS would be covered by his liability insurance. Finally, it was alleged that Oster's insurance agent refused to confirm in writing a telephone conversation, requesting verification that the problem was covered by liability insurance.
Attached to the affidavits were copies of the referenced letters. The letter dated March 14, 1996, discussed the independent tests to be done, utilizing a moisture meter, including a test on Oster's personal residence:
"If each of those moisture tests comes back without any penetration of moisture described in the Times Picayune article, then we will finalize the job as originally planned utilizing the Synthetic Stucco. If however there is any moisture penetration discovered at any of these three test sites, then you will proceed with an alternative course of action."
The letter of March 21, 1996 evidenced that Mr. Stokes requested the specific tests results "indicating that there was 0% moisture on any of the homes tested", and requested the corporate guarantee:
Once I have some assurances as described above, I will be much more at ease with your advice to move forward with synthetic stucco.
On April 9, 1996, his letter to Oster concluded:
On another note, I am still waiting on your detailed response from my 3/21/96 letter regarding the synthetic stucco. This product still very much concerns me especially after a rather large piece fell off on the driveway window area. I think we should meet at the house again to discuss alternatives as this product seems to me to be very inconsistent with certain areas feeling solid and other areas feeling very weak as you walk around the house and physically touch the material.
A copy of Mr. Stokes' letter to the insurance agent was also attached.
In a second affidavit attached to a reply memorandum, Mr. Oster attested that after Mr. Stokes expressed concern about the reliability of EIFS, he and Bob McDaniel, the subcontractor who installed the EIFS, inspected the EIFS on the Stokes home and found no problems. In response to the Stokes' request for tests, Mr. Oster and Paul Chartier, superintendent of Oster, performed moisture testing with a moisture meter on four homes clad with EIFS previously built by Oster. The testing revealed no moisture problems and on March 27, 1996, Mr. Oster forwarded a letter to Mr. Stokes with the test results along with a copy of the manufacturer's warranty on the EIFS. In April of 1996, *990 prior to completion of construction, Mr. Oster and Mr. McDaniel complied with Stokes's request and again inspected the Stokes residence, finding no problem with the product. According to the affidavit, the Stokes expressed no additional concerns and construction was completed in October of 1996. No further complaints or notification of problems were received until February, 2000. A copy of Oster's letter to Stokes was attached.
On appeal, Stokes avers that the breach of contract and negligence suit is not a suit for breach of warranties under the NHWA, but rather a breach of the construction contract which occurred before the residence was completed, when Oster refused to remedy the defect. Alternatively, Stokes argues that if the matter does come under the NHWA, the required notice was given in the letters sent prior to completion and occupation of the house. According to Stokes, under La. R.S. 9:3145 an owner is required to notify the builder of any defects, which he distinguishes from damages, and that there is no provision in the statute requiring him to give another notice of damages after the warranty commencement date.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate.[1] Although summary judgments are now favored, the mover must still show the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law.[2] A genuine issue is a triable issue. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery.[3] On motion for summary judgment, whether or not a genuine issue of material fact exists is based on whether a fact whose existence or nonexistence may be essential to the cause of action under the applicable theory of recovery, i.e., one that would matter on the trial of the merits.[4]
An appeal of a trial court decision on a motion for summary judgment will be decided on the evidence which was in the record at the time the trial court rendered its judgment.[5]

ANALYSIS
Under La. R.S. 9:3150, the NHWA provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to new home construction, and no other provisions of law relative to warranties and redhibitory vices and defects apply. According to the NHWA, the warranty commencement date is the date that legal title to a home is conveyed to its initial purchaser or the date the home is first occupied, whichever occurs first.[6] Stokes argues that the present action is one for breach of the construction contract, which breach occurred before the residence was completed and occupied, when Oster refused to use an alternative product. Thus Stokes urges *991 that the matter is not exclusively governed by the NHWA.
Where the cause of action has not wholly arisen from construction defects, violations of the building code, or poor workmanship, Louisiana courts have determined the NHWA was not the sole remedy available to the home owner.[7] The Act establishes a ten-year builder's warranty for a major structural defect; a major structural defect is defined to include physical damage caused by failure of the load-bearing portions, including walls, which affects their functions to the extent the home becomes unsafe, unsanitary or otherwise unlivable.[8] Excluded by the Act is any defect in, or any defect caused by, materials or work supplied by anyone other than the builder, or any employee, agent, or subcontractor of the builder;[9] thus, included in the Act is any defect caused by materials or work supplied by the builder or his agent, employee, or subcontractor. All provisions of the NHWA "apply to any defect although there is no building standard directly regulating the defective workmanship or materials."[10]
The damage complained of by Stokes arises wholly from the alleged construction defects, and defects in the EIFS material supplied by Oster. Here, the construction was completed and Stokes occupied the home. The damages which occurred are alleged to be a result of a defect in construction within the terms of the statute. Under these circumstances these the NHWA is the owner's exclusive remedy against the builder.
Before undertaking any repair himself or instituting any action for breach of warranty, the owner shall give the builder written notice, by registered or certified mail, within one year after knowledge of the defect, advising him of all defects and giving the builder a reasonable opportunity to comply with the provisions of this Chapter. The builder shall give the owner written notice of the requirements of this Chapter at the time of the closing.[11]
There is no evidence, and Stokes does not contend, that following discovery of the moisture damage he notified Oster prior to undertaking the repairs himself, or requested that Oster replace or perform the repairs. Rather, Stokes urges that even if the matter is ruled exclusively by the NHWA, his letters evidence the requisite notice to the builder. Stokes distinguishes between "damages" and "defects", averring that the letters served as notice of the defects, and that as the statute does not state a time frame as to when notice should be given, another notice of actual damages after the warranty commencement date was not required.
Such interpretation is not supported by the Act itself. The builder's warranty excludes any condition which does not result in physical damage to the home.[12] Prior to sustaining actual damages, Stokes could not have brought an action under the NHWA so as to trigger R.S. 9:3145.
A damage can be considered to have been sustained ..., only when it has *992 manifested itself with sufficient certainty to be susceptible of proof in a court of justice.[13]
Additionally, the letters written by Stokes and attached to his deposition evidence that although the EIFS was originally agreed upon, he became concerned about its suitability and insisted on several tests and reassurances from Oster. Stokes had stated that if each of those moisture tests came back without any penetration of moisture, then the job would be finalized as originally planned utilizing the EIFS. The record indicates that Oster performed and reported the tests as showing no moisture problems. While his subsequent letter indicates his continuing concern, Stokes accepted the house without any additional warranties. There is no showing that Stokes insisted the EIFS be replaced before taking possession. We cannot construe these letters as putting Oster on "notice" of a defect.
Absent compliance with the mandatory notice provision, recovery under the NHWA is precluded.[14] As the NHWA is Stokes' sole remedy under the circumstances of this case, summary judgment was properly granted.
The summary judgment dismissing Stokes' petition is affirmed. Costs are taxed to appellants.
AFFIRMED.
NOTES
[1] Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; McVay v. Delchamps, Inc., 97-860 (La.App. 5 Cir. 1/14/98), 707 So.2d 90.
[2] La. C.C.P. art. 966. Nestor v. State Farm Mut. Auto. Ins. Co., 00-1515 (La.App. 5th Cir.12/27/00), 778 So.2d 89.
[3] Penalber v. Blount, 550 So.2d 577, 583 (La. 1989); Bauer v. Dyer XXXX-XXXX (La.App. 5th Cir.2/28/01), 782 So.2d 1133, writ denied XXXX-XXXX (La.5/25/2001), 793 So.2d 162
[4] Bauer v. Dyer, supra.
[5] Dyes v. Isuzu Motors, Ltd. in Japan, 611 So.2d 126 (La.App. 1st Cir.1992); also see Larkin v. First of Georgia Underwriters, 466 So.2d 655 (La.App. 5 Cir.1985).
[6] La.-R.S. 9:3143(7).
[7] See e.g. Thorn v. Caskey, 32,310 (La.App.2d Cir.09/22/99), 745 So.2d 653; Squyres v. Nationwide Housing, 98-8 (La.App. 3d Cir.06/03/98), 715 So.2d 538; Melancon v. Sunshine Construction, 97-1167 (La.App. 1st Cir.05/15/98), 712 So.2d 1011; Leon v. Deters Custom Homes, 97-0772 (La.App. 1st Cir.04/08/98), 711 So.2d 346
[8] La. R.S. 9:3143(5).
[9] La. R.S. 9:3143(6).
[10] La. R.S. 9:3141.
[11] La.R.S. 9:3145.
[12] La. R.S. 9:3144(B)(13).
[13] Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986), citing Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910).
[14] See Thorn v. Caskey, 32-310 (La.App. 2nd Cir.9/22/99), 745 So.2d 653.