KNOLL, Justice.*
| ]This litigation over defects in a home concerns the statute of limitations for damages caused by water intrusion into a house, which calls into question what constitutes major structural defects as defined in the New Home Warranty Act (“NHWA”). In addressing this issue we must determine whether the defects in the load-bearing walls were a result of “any defect” due to noncompliance with the buildings standards, subject to a one year peremptive period, or whether they constituted a “major structural defect” due to noncompliance with the building standards, subject to a peremptive period of five years. The District Court found the defects in the four exterior load-bearing walls constituted a major structural defect under the Act to which the five-year warranty period applied and awarded plaintiff, Barbara Shaw, damages. The Court of Appeal, First Circuit, reversed, finding the plaintiffs claim was for a defect in workmanship subject to a one year per-emptive period. For the following reasons, we reverse the Court of Appeal and reinstate the trial court judgment, finding the record supports the failure of the load-bearing walls affected the “load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable,” as provided by La.RevjStat.2 § 9:3143. Thus, it constituted a major structural defect and the five-year warranty applied.
FACTS AND PROCEDURAL HISTORY
In 2005, Acadian Builders and Contractors, L.L.C. (“Acadian”), built a home in Pelican Point subdivision in Ascension Parish and sold the home to Ronald J. and Gay Dalton Rakosky on September 27, 2005. In February of 2006, Barbara Shaw purchased the two-story, 3700 square foot home from the Rakoskys for $405,000.00. By fall of 2008, signs of water damage began to appear. Shaw hired a home inspector, John Minor, with a specialty in water intrusion who discovered the inside of the exterior walls had been saturated for an extended period of time, causing rot in the building studs and extreme deterioration of the Oriented Strand Board (“OSB”), the particle board that once served to support and stabilize the studs. He concluded the water intrusion was caused by multiple failures to follow building code standards as well as site-specific building standards.
In February of 2009, Shaw notified the defendant in writing of the water intrusion and alleged defects. Acadian employees visually inspected the home in April, subsequently sending a letter to Shaw stating Acadian’s obligations to repair the specified problems under the NHWA had already prescribed. In June 2009, Shaw filed the instant suit, alleging water damage to the walls of her home, caused by the improper installation of the stucco system, which had compromised the load-bearing functions of the home to the extent the home had become unsafe. Additionally, she alleged the water intrusion had created unsanitary conditions allowing *916 mold, mildew, and insect infestations to thrive.
Acadian filed peremptory exceptions of prescription and peremption, which the District Court granted with respect to all claims other than those for “major | ..¡structural defects” as defined in La.Rev. Stat. § 9:3143(5). Additionally, Acadian argued the damages were caused by Shaw or a third party and Shaw did not take steps to mitigate the damages.
The only expert to testify at trial was plaintiffs expert, John Minor. He testified that he had identified multiple failures to comply -with building code standards as well as job-specific building standards. The International Building Code, adopted in its entirety by reference in the Ascension Parish Building Code, contains the following requirement: “Exterior walls shall provide the building with a weather-resistant wall envelope.” Int’l Bldg Code § 1405.2 (Int’l Code Council 10th ed.2003); Ascension Parish Code of Ordinances, § 6-16. As the only expert witness at trial, Minor reported that the exterior walls of the house fell woefully short of providing the required weather-resistant envelope.
Minor testified that the OSB serving as a “diaphragm” for the building studs should have been completely wrapped in a shingled fashion with a moisture-resistant material (“Tyvek paper”). Subcontractor building standards provided to Shaw through discovery specified the Tyvek paper “be applied horizontally with upper layers overlapping the lower layers by no less than two inches” before the application of the stucco. Significantly, when Minor cut into the exterior walls of the house, he discovered the Tyvek paper had been lapped around the wall in reverse, channeling water toward the OSB and building studs rather than repelling it away from the house. Furthermore, the Tyvek paper had been wrapped to the inside of the house’s flashing materials, encouraging rather than preventing water intrusion, with an effect Minor compared to a person who tucks his rain pants inside of his boots and gets his feet soaked.
Another major defect concerned the house’s flashings. Minor found the flash-ings installed around the windows and doors were inadequate. Below exterior |4doors, pan flashings should have been installed to collect and drain water away from the building. However, Minor testified that these flashings were absent, resulting in water damage that penetrated the subfloor, causing swelling of the sub-floor and eventual damage to carpets. Above doors and windows, lack of adequate head flashings resulted in such significant water damage to the trim of the house that one door casing was so saturated Minor could not even take a moisture meter reading. Instead, to demonstrate the extent of the decay, he sunk the entire metal length of his car key into the door casing with almost no effort and took a photograph.
Other major structural defects described by Minor included inadequate kickout flashing where the wall system met the roof and a lack of maintainable caulk joints where the stucco wall met the brick garage, allowing water penetration as the different materials expanded unequally. All four exterior load-bearing walls suffered considerable water intrusion, resulting in saturated and rotting OSB, rotting studs, and soaked insulation. Major elements of restoration of the house will include tearing off all of the stucco and Tyvek paper, removing all of the OSB, temporarily jacking and securing the property, replacing approximately 60 decaying building studs, and reconstructing all four exterior load-bearing walls.
Acadian offered no expert testimony to rebut Minor’s findings. Its defense rested *917 upon the testimony of its employees, who testified that adequate tape flashings had been installed in accordance with their protocols. Notably, no Acadian employee could verify that the Tyvek paper had been installed properly. Acadian employees instead attempted to attribute the water intrusion to various other causes, such as holes in the stucco created by the owner, lack of routine maintenance, and damage caused by Hurricane Gustav. However, Minor testified these scenarios were implausible. Minor maintained the widespread water intrusion |scould not have been caused by the small holes created by the homeowner and filling in cracks in the stucco would only have sealed the intruding water into the walls, which would have caused further deterioration. Nor could the severe extent of the deterioration be the aftereffect of Hurricane Gustav, which had struck the home only two months pri- or to his inspection.
At the end of the trial, the District Court made the following factual findings:
1. The stucco exterior of the home was not properly applied and sealed, allowing water to come into contact with the walls and accumulate between the stucco and the walls;
2. This water accumulation over time caused the OBS [sic] plywood walls nailed to the studs on the first floor to rot away. The OBS [sic] plywood serves a structural purpose by holding the house supporting studs together. This constitutes actual physical damage;
3. This water accumulation has also caused the load bearing studs themselves to begin to rot and will slowly over time, cause them to rot;
4. This water accumulation also causefd] the frames to rot, so that the front door frame was so softened that a key could be sunk in the transom over the door.
5. These conditions were due to noncompliance with building standards.
6. These conditions were not caused by nail holes, screw holes, the roof, lack of proper maintenance, or hurricanes.
7. The exterior of the house is almost entirely stucco except for a portion of the garage.
Based on these findings, the District Court held a “major structural defect” existed and awarded a judgment in favor of Shaw in the amount of $115,380.68 plus legal interest from the date of judicial demand until paid, all costs of the proceedings, and reasonable attorney fees. Acadi-an appealed, arguing all of the claims were perempted because Shaw only presented evidence of defects in workmanship (ie. stucco application) rather than evidence of a major structural defect.
The Court of Appeal reversed, finding no “major structural defect” under its interpretation of La.Rev.Stat. § 9:3143(5), despite agreeing with the above factual Ififindings of the District Court. We granted this writ, because as more fully explained below, we find the Court of Appeal fell into error in its interpretation of the NHWA.
DISCUSSION
The NHWA was introduced by the legislature to “promote commerce in Louisiana by providing clear, concise and mandatory warranties for the purchasers and occupants of new homes in Louisiana,” and the act sets out “the exclusive remedies, warranties, and peremptive periods as between builder and owner relative to home construction.” La.Rev.Stat. § 9:3141, 3150. Warranties expressly provided under the NHWA include:
*918 (1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
[[Image here]]
(8) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards. La.Rev.Stat. § 9:3144(A) (emphasis added).
The warranty commencement date is the date when legal title to a home is conveyed to the initial purchaser or the date the home is first occupied, whichever is first. La.Rev.Stat. § 9:8148(7). Acadian transferred legal title of the home to the Rako-skys on September 27, 2005. Shaw purchased the home from the Rakoskys in 2006 and filed suit on June 24, 2009, approximately four years and eight months after the warranty commencement date. The District Court properly found all claims except those for “major structural defects” had expired by the date the suit was instituted. Therefore, the question before this Court is whether the District Court properly found a “major structural defect” such that Shaw’s claim for damages would be subject to the five-year peremptive period.
|7The NHWA defines “major structural defect” as:
... any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable:
(a)Foundation systems and footings.
(b) Beams.
(c) Girders.
(d) Lintels.
(e) Columns.
(f) Walls and partitions.
(g) Floor systems.
(h) Roof framing systems.
La.Rev.Stat. § 9:3143(5) (emphasis added).
The District Court found a “major structural defect” existed in the load-bearing exterior walls. Although the Court of Appeal did not dispute the District Court’s factual findings, the Court disagreed with the District Court’s interpretation of “major structural defect” under the NHWA. Shaw v. Acadian Builders and Contractors, LLC, 11-2164 (La. App. 4 Cir. 01/04/13) (unpub’d). In reversing the District Court’s decision, the Court of Appeal stated:
[T]he record [is] devoid of any evidence establishing that the “actual physical damage” to the walls and building studs were “caused by failure of the load-bearing portions.” The record contains no evidence establishing that the stucco applied to the exterior of the home was load bearing. As such we must conclude that the evidence presented at trial did not establish a “major structural defect” as defined in La. R.S. 9:3143(5). Id. (emphasis in original).
We find this conclusion is a misinterpretation of La.Rev.Stat. § 9:3143(5) by failing to read the statute in its entirety. The statute simply requires physical damage to one of the designated load-bearing portions be caused by the failure of that designated portion. Although defendant makes much of Minor’s statement that the stucco system, including the failed weather-resistant barrier, has no “structural bearing,” this testimony is not relevant, *919 because the stucco system is undeniably part of the “wall,” which is a statutorily designated “load-bearing portion.” The operative question here is whether actual physical damage to the wall has been |scaused by a failure of the wall.[1] There is no additional requirement that the failed component of the wall also be load-bearing. We agree with the dissenting judge below, who reasoned La.Rev.Stat. § 9:3143(5)(f) does not further define “wall” nor does it further limit the portions of a wall which may be considered “load-bearing portions.” Id.
By failing to read the statute in its entirety, the Court of Appeal and defendant’s interpretation would read out the words “which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable.” La.Rev.Stat. § 9:3143(5) (emphasis added). The Court of Appeal’s interpretation stops at the phrase “failure of the load-bearing portion.” Id. Applying the entirety of La.Rev.Stat. § 9:3143(5) to the evidence, we find the record supports the District Court’s holding. The failure of the walls in allowing extensive water intrusion has caused actual 'physical damage, namely, rotting and deterioration of the studs and OSB. The deterioration of the studs has left the load-bearing exterior walls severely compromised and subject to collapse; therefore, this damage is affecting the walls’ load-bearing functions to the extent the home has become unsafe, unsanitary, or otherwise unlivable.
Defendant attempts to demonstrate that this statutory interpretation would lead to absurd consequences, comparing stucco to any other aesthetic covering and insisting that finding for the plaintiff will mean poorly applied or chipped exterior paint would constitute a “major structural defect.” We disagree. Minor exterior defects such as improperly applied paint would be evident and would require lahomeowner mitigation long before damage could reach the point of “affecting the load-bearing function” of a home. Here, multiple divergences from building code and job-specific standards in construction of all of the exterior walls have resulted in a home that has become structurally unsound within the first five years of its existence. This is not, as the defendant urges, a case about the “cosmetic veneer” of a home; rather, the record fully demonstrates this is a case about a home whose load-bearing exterior walls were constructed in such a deficient manner as to constitute a major structural defect under the NHWA.
The defendant further argues that damages could have been prevented by diligent homeowner maintenance, but the District Court was not persuaded by this argument. We agree with the District Court. Under La.Rev.Stat. § 9:3144(B)(5), the builder is not liable for “any loss or damage which the owner has not taken timely action to minimize.” However, Minor testified the failed construction of the walls, including inadequate flashings and the reverse-lapped Tyvek pa *920 per hidden beneath the stucco, went undetected in the initial inspection and would not have been obvious to a diligent homeowner. Rather, cracks, which defendant does not dispute are typical and expected in stucco walls, and other relatively subtle visible signs of damage that manifested on and around the exterior stucco system would not have alerted Shaw to the widespread internal structural deterioration of the home.
As Minor testified, even if Shaw would have taken additional precautions like filling the cracks and small holes in the stucco, it would not have prevented water intrusion because of absent or inadequate flashings and caulk joints nor would it have fixed the reversed-lapped Tyvek paper channeling water toward the inner walls. Stucco is a porous material and water penetration through stucco is normal and anticipated. Walls prepared for stucco must be adequately constructed [into resist water intrusion and resultant damage. Here, the load-bearing walls were defective from the date of construction and could not have been salvaged through minor exterior repairs. Neither the extent of the walls’ defects nor their damages were readily apparent. The interior deterioration required a professional home inspector to tear open a wall to discover the pervasive water intrusion lurking throughout the interior OSB and studs.
Acadian did not offer any expert witnesses to rebut Minor’s testimony. Although Acadian employees insisted that the home’s flashings and caulking had been adequate, Minor’s testimony as the sole expert witness, as well as photographs and other evidence of the extensive water intrusion, belies those claims. Additionally, no defense witness could verify that the Tyvek paper had been lapped properly. Indeed, one of the defendant’s employees who worked in the warranty division at the pertinent time admitted the allegation that the Tyvek paper was reverse-lapped would be “serious” and a “real problem” if it were true. In the end, the District Court was .persuaded Shaw’s allegations were true and found the home’s damages were caused by “non-compliance with building standards.” These factual findings are entitled to great deference and may not be disturbed absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). Under the NHWA, a home must be free from “major structural defects due to noncompliance with the building standards” for five years from the warranty commencement date. La.Rev.Stat. § 9:3144(A)(3). Therefore, the District Court’s factual findings triggered liability for Acadian under the five-year warranty provided by the NHWA.
We find the record clearly supports the District Court reasonably found evidence establishing the existence of a major structural defect. Because the home was not free from major structural defects due to noncompliance with the building standards, the five-year warranty period is applicable. Thus, Shaw timely filed suit | ^within the five-year period provided for in La.Rev.Stat. § 9:3144(A)(3), and the Court of Appeal erred in finding the claims were perempted.
DECREE
For the foregoing reasons, the judgment of the Court of Appeal is hereby reversed and the trial court judgment is reinstated in its entirety.
REVERSED AND RENDERED.
GUIDRY, Justice, dissents and assigns reasons.
Retired Judge ROBERT J. KLEES, assigned as Justice ad hoc, sitting for HUGHES, J, recused.

 Judge Robert Klees was assigned as Justice ad hoc, sitting for Hughes, J., recused.

. Defendant points to Caminita v. Core, 10-1961 (La.App. 1 Cir. 5/6/11), 66 So.3d 19, writ denied 11-1172 (La.9/16/11), 69 So.3d 1149, in support of this statutory interpretation. Insofar as the court in Caminita relied on the same erroneous statutory interpretation, the case is overruled. However, we find the factual circumstances in Caminita are distinguishable. Although the homeowners in Caminita alleged the installed Chinese dry wall causes damage to building studs, they failed to allege the building studs were already damaged. Id. at 23. Therefore, the petition lacked allegations of any physical damage affecting the load-bearing function of the wall to the extent the home was unsafe, unsanitary or unlivable, as required by La. Rev.Stat. § 9:3143(5).