FREDERICKA HOMBERG WICKER, Judge.
| sDefendant-builder, Randy Sternberger, appeals the trial court’s judgment awarding plaintiffs-homeowners $358,514.70 under the New Home Warranty Act for damages resulting from a major structural defect to their home. Because we find that the trial court improperly awarded damages for repair work specifically excluded under the New Home Warranty Act, we amend the trial court judgment accordingly. In all other respects, we affirm.

PROCEDURAL BACKGROUND

On April 30, 2010, plaintiffs, Sophia Ma-tassa Campo, wife of/and James Anthony Campo, filed suit in the Twenty-Ninth Judicial District Court for the Parish of St. Charles under the New Home Warranty Act against defendant-builder herein, Randy Sternberger (d/b/a R.J. Construction), for damages to a newly constructed home they purchased from Craig and Tonya Hingle.[1] On the same date, plaintiffs filed a separate redhibition suit against the Hin-gles, asserting that the Hingles fraudulently concealed known defects to the property prior to the sale.[2] |4On September 29, 2010, the two suits were consolidated pursuant to La. C.C.P. art. 1561. Thereafter, Sternberger filed a third-party demand *911 against the engineering and structural designers of the . home,-Robert D. Lee Consulting Engineers, Inc. and J.E. Bruce Design Consultants, Inc., and their insurers.
Following a three-day bench trial, the trial judge found that plaintiffs proved that the abnormal settlement of the home’s foundation constituted ¾ major structural defect and that the, defendant-builder, Sternberger, breached his warranty that the house would remain free of major structural defects a? required under the New Home Warranty Apt. The trial judge awarded plaintiffs $358,514.70 in damages against Sternberger to repair the ho.me.[3]

FACTUAL BACKGROUND

Craig and Tonya Hingle purchased - a vacant lot at 107 Cove Lane in North Ormond, Louisiana and retained Sternber-ger to construct the home.[4] In the spring of 2007, approximately two years after they moved into the home, the Hingles contacted Sternberger to inspect and repair a leaning/tilting concrete pad that supported the outdoor air conditioning unit. Sternberger inspected the leaning concrete air conditioning pad and, while at the home, he noticed that the brick veneer on the east wall of the home was cracking. Sternberger contacted the mason who originally did the brick and mortar work to come back to the home and patch the cracking.
The testimony and photographic evidence presented .at trial reflect that the cracking to the east wall was substantial. Mr. Jules Guidry, . a residential ^contractor, constructed the home directly next to plaintiffs’ home in the spring of 2007. Prior to beginning construction, he noticed cracking along the east wall of the Hingles’ home. Mr. Guidry decided to take photographs to document the damage to the Hingles’ home prior to initiating pile driving for the residence he constructed next door. Those photographs were introduced into evidence at trial and reflect a significant, continuous crack down the east side of the home.
Ms. Chaney Murray, one of plaintiffs’ neighbors, testified at trial that, at some time before the Canipos moved into the home, she noticed a “significant crack on the east side of the house.” She testified that she immediately spoke to her husband about it and inspected her home for similar findings, which were not present. Another neighbor, Ms. Donna Blanchard, recalled that, at some point in 2007, Mr. Hingle spoke to her about the cracking on the side of the house as well as the air conditioning pad leaning or tilting away from the house.
In June of 2007, within a couple of months after Sternberger .repaired the cracking to the east wall, the Hingles listed the home for sale with a real estate agent. When they completed a residential disclosure form with their agent, the Hin-gles failed to disclose the repair of the cracking to the east wall of the house. Plaintiffs purchased the home on July 21, 2008. Within a few months of moving into the home, plaintiffs began experiencing plumbing problems.[5] Initially, plaintiffs *912 contacted- Roto-Rooter, who came to the home on two occasions to clean out a drain line. In May of 2009, the sewer lines backed: up through the kitchen sink. At that time, plaintiffs contacted their home' warranty provider,, who sent a plumber, Ray Stovall, to inspect the plumbing issues. Mr. Stovall testified that he conducted a video inspection of the plumbing, which revealed that a drain line had I (¡sheared and needed to be replaced.. Mr. Stovall drilled a hole into the,slab of the home at the break and repaired the section of the broken drain line. Mrs. Campo testified, however, .that Mr.' Stovall instructed her that ádditional sand would need to be pumped under the house before the plumbing repairs could be completed. Mr. Campo testified that the repairs per-, formed by Mr. Stovall did not cure the plumbing issues.
In . August of 2009, plaintiffs contacted Gator’s Sand Pumping to pump sand under the house. According to Mrs. Campo, after Gator’s Sand Pumping arrived at the house — but prior to pumping any sand— the workers noticed water pouring under the house from the bathroom, where Mr. Campo was showering at that time. Plaintiffs then realized that the plumbing problems were more serious than initially suspected. Plaintiffs retained Harold’s Plumbing, who determined that the entire underslab sewer system needed to be repaired.
Harold’s Plumbing tunneled under the slab of the home to repair the entire un-dei-slab sewer system. " In addition to plumbing problems, plaintiffs also noticed cracks in their sheetrock throughout the home, including separations of moldings at or near windows and doors. Mrs. Campo testified that certain windows and doors throughout the home did not function properly; She testified that the windows in the master, bedroom were “inoperable" and that she could no longer lock the kitchen window, which she claimed was a safety concern.[6]
On September 1, 2009, plaintiffs sent a certified letter to Sternberger, informing him of various issues to the home, including sheetrock cracking and electrical and plumbing issues. The Plaintiffs attached to the letter a report issued by U.S. Forensic, LLC, which opined that the driveways and sidewalks at the home were placed on soil hot approved for homesite development, resulting in ^significant subsidence. Plaintiffs sent subsequent letters to Sternberger by certified mail on February 2, 2010, and March 30, 2010. The third letter sent to Sternberger by certified mail also contained the March 9, 2010 report of Gurtler Bros. Consultants, LLC, which reported that plaintiffs’ home was in “serious structural distress.”
At trial, Michael Gurtler, of Gurtler Bros. Consultants, LLC, was accepted as an expert in engineering, contracting, general home inspections, moisture management, and thermographic imaging techniques and inspections. Mr. Gurtler testified that plaintiffs contacted him at some point in early 2010 to conduct an inspection of their home. He inspected the home on February 24, 2010, and found “numerous significant sways in the roof system” as well as cracking at the front porch, which he opined indicated that the front porch was pulling away from the house. He found that the “total settlement numbers” or the differential settlement figures were not of- great concern, but that his observations of the physical *913 features present -in the home were alarming, Concerning the exterior of the home, Mr. Gurtler examined the brick veneer on the east wall and found evidence that -the brickwork had been previously repaired and had since reopened, indicat-, ing ongoing settlement. He testified that the brickwork cracking was present the entire length of the 71-foot east wall and that such cracking in a newly-constructed home, less than five years old, was “extremely abnormal.'” Further, he noted separation between the exterior brick and certain windows in the home. Mr. Gurt-ier also documented the’ settlement and cracking of the sidewalks, driveways,’ and back patio and opined that poor soil fill and compaction techniques likely contributed to the settlement of those areas.
Mr. Gurtler inspected the entirety of the interior of the home. He found sheetrock cracking and separation of windows from trim work throughout various Rareas of the home. He inspected the attic and found that the attic framing had begun to separate due to abnormal foundation settlement. He further noticed that the attic floor joists were separating and that a roof rafter had separated from the ridge beam. Mr. Gurtler’s March 2010 report-indicated that the home was in “serious structural distress:”
, Mr. Gurtler testified that his first inspection was a “snapshot without the benefit of time.” He conducted four inspections of the home over a three-year period.[7] Mr. Gurtler testified that during his second inspection, six months after his first, he noticed the interior and exterior cracking throughout the home was “more pronounced.” On August 16, 2012, approximately two years after his second inspection, Mr. Gurtler inspected' the property for a third time and issued a report. During his 2012 inspection, Mr., Gurtler noticed a.- significant change in the ¡exterior and interior of the home.
As to the exterior of the home, Mr;-Gurtler found significant changes to the brickwork cracking on the east wall of the home. He noticed-exterior horizontal displacement of the , brick, which he testified was extremely irregular. He. found that some of the patchwork mortar had fallen out and the brickwork had separated from the exterior windows, allowing for rainwater intrusion.
As to the interior- of the home, Mr. Gurtler conducted a thorough inspection and found additional sheetrock cracking that was mot present in his previous inspections.[8], He noticed cracking between the aluminum windows and the window trim throughout the home and found that multiple doors ,no longer opened and closed properly. Mr. Gurtler testified that he attempted to open the master bedroom window, exerting all of his energy, but that he could only open the bwindow approximately one to one-and-a-half inches before the window frame bent. Mr. Gurtler testified that the Campos do not have an emergency exit in them bedroom in the event of a fire. He further testified that the front door no longer locked properly. He testified that he was able to lock the door, with “some effort,” but that a child certainly could not unlock the front door, if necessary, which he considered to be a safety issue.
Mr. Gurtler and his brother, Friedrich Gurtler, a , Louisiana licensed engineer, again inspected the home on May 13, 2013. During that fourth inspection, Mr. Gurtler *914 found that three of the front porch columns were “displaced relative to their original positions” and that the front porch began to slope toward the front door of the home. Mr. Gurtler and Friedrich Gurtler performed floor level readings at the 2013 inspection to measure differential settlement to compare those readings to those from the 2010 inspection.
Gurtler Bros, issued a report on June 24, 2013.[9] The report stated that the differential settlement readings had significantly increased between 2010 and 2013.[10] The report explained that residential foundation systems generally experience most differential settlement within the first five years after construction and that the rate of settlement “should decrease as the property ages.” The report further concluded that the “magnitude of the change in differentials that we have recorded between 2010 and 2013 are reflective of failure of the foundation system” and that said failure constituted a major structural defect under the New Home Warranty Act.
Mr. Gurtler testified that the foundation for plaintiffs’ home is a post-tension pile-supported concrete slab that, in his opinion, is continuing to settle and never Uncompleted its initial settlement. Mr. Gurtler testified that, in his opinion, the foundation of the home has failed. Mr. Gurtler provided somewhat inconsistent testimony concerning the role that the foundation design, if any, played in its failure. He stated that he could not testify as to whether the foundation design plans called for the correct number of piles or whether the home was built according to those plans. Mr. Gurtler explained that Eustis Engineering or a similar firm would be more capable of' performing the pile calculations to determine if the foundation design for pile placement contributed to the foundation failure. Mr. Gurtler testified that he based his opinions contained in his reports on his physical inspections over a period of time and observations of the physical characteristics of the home.
Defendants presented the video deposition of their expert, Robert Anderson, a Louisiana licensed engineer. In the 1960s, Mr. Anderson participated in the design and development of the “Kelly system,” which is the type of residential foundation used for plaintiffs’ home, and has over 45 years of experience practicing as a structural engineer.
Mr. Anderson testified that he reviewed the plans for the home from J.E. Bruce Design Consultants and Lee Engineers and that he found no deficiencies in the plans. He, in fact, performed calculations of the pilings as designed and found that the piling plans complied with sound engineering practices and that the placement and number of piles called for in the plans were more than adequate for the area. He could not testify, however, as to whether the pilings were actually placed according to the plans during construction.
Mr. Anderson conducted one inspection of the home and issued his report on December 10, 2012. Mr. Anderson’s inspection consisted of performing a floor level survey to determine the differential settlement reading. Mr. Anderson | n determined that the home had a differential settlement reading of 2.2 inches. He testified that the differential settlement *915 readings of plaintiffs’ home are within the average differential settlement readings for the greater New Orleans area. He admitted that he did not inspect the home’s second floor or attic and did not inspect the interior of the home in the same manner as Mr. Gurtler.
Mr. Anderson opined that the plumbing work performed by the Plaintiffs contributed to the settlement of the home. He testified that the elevation changes to the home, occurring near the master bedroom and bathroom, correlated with the plumbing work performed. He further stated that the filling of sand under the house could have contributed to additional foundation settlement. Mr. Anderson opined that many of the drywall and other defects, including the cracking of the exterior brick veneer, are purely cosmetic and do not indicate structural issues. In response to Mr. Gurtler’s opinion that the home’s foundation has failed, he stated that he does not consider a foundation' to have failed unless it cannot be lifted and repaired. He opined that the foundation is performing “consistent with most of the homes [he is] familiar within that area.”
Sternberger testified at trial that he constructed the home in accordance with the structural and engineering design plans. He testified that he personally verified that each of the 121 pilings was driven into the soil according to the plans. He further testified that he did not know the type of soil upon which he built the home. When he discovered the cracking to the east wall of the home, he contacted a bricklayer to patch the mortar. He stated that, at that time, he inspected a portion of the home’s slab and did not see any cracking or issues to cause concern. After examination of the slab, he determined that the reason for the cracking of the brick veneer was expansion from heat.
j igMr. Justin Roubion, with Roubion Construction, inspected the property at issue and prepared an estimate for $283,405.20 to perform shoring work to the home. His estimate included replacing existing soil, pumping new sand/fill under the home, lifting and re-aligning the home, and placing 201 cónchete' pilings. Mr. Stephen Fleishmann, a general contractor, also testified that he inspected plaintiffs’ home in September and December of 2010. Mr. Fleishmann, the owner of Titan Construction, prepared an estimate to perform repairs to the home subsequent to the shoring work, stating that the shoring work will likely cause need for cosmetic repairs. Mr. Fleishmann prepared an estimate of $46,899.00 to repair the drywall cracks throughout the home, cracking in the east wall brick veneer, remedial paint and trim work, and to adjust interior doors and replace one exterior door.

DISCUSSION

Defendant-builder Sternberger appeals the trial court judgment against him, awarding plaintiffs $358,514.70 for damages under the New Home Warranty Act. First, Sternberger argues the trial court erred in qualifying and accepting Mr. Gurtler, who is not a licensed engineer, as an expert at trial in the field of .engineering. Second, he contends that plaintiffs’ claims for certain damages are perempted and/or excluded under the New Home Warranty Act. Third, he asserts that the trial court erred in dismissing his claims against third-party defendants, J.E. Bruce Design Consultants and Lee Engineers. Finally,-Sternberger claims that the trial court erred in refusing to apply the statutory immunity provided' to builders under La. R.S. 9:2771.
Upon our review, we find that Sternber-ger’s assignments of error concerning the qualification of plaintiffs’ expert and the dismissal of the third-party defendants *916 lack merit. We further find that the trial court did not err in | ^finding that plaintiffs’ claims are not perempted under the New Home Warranty Act or in refusing to apply statutory immunity pursuant to La. R,S. 9:2771 under the facts of this case. However, we find that the trial judge erred in granting certain damages that are excluded under the New Home Warranty Act and we amend the judgment accordingly.

Qualification of Gurtler as an Expert-

Sternberger first asserts that the trial court erred in accepting Mr. Gurtler as an expert in engineering.’ Sternberger contends that Mr. Gurtler is prohibited from practicing engineering, including the rendering of engineering opinions, under La, R.S. 37:681, which prohibits non-lieensed persons from “practicing or offering to practice engineering.” Sternberger argues that, because Mr. Gurtler is not a licensed engineer, he is prohibited from rendering any engineering opinions and should not have been accepted as an expert in that field.[11]
Admissibility of expert testimony in Louisiana is governed by Louisiana Code of Evidence article 702: At the time of trial, La. O.E. art.702 provided:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The admissibility, of expert testimony under La. O.E. art. 702 “turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue.” Cheairs v. State, 03-0680 , (La.12/3/03), 861 So.2d 636, 642, quoting La. C.E. art. 702, Official Comment (c), citing 3 J. Weinstein & M. Berger, Weinstein’s Evidence, P 702(02) (1981). A trial judge has “broad discretion in determining whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert.” Cheairs, 861 So.2d at 641.
The. Louisiana Supreme Court recently adopted a three-part inquiry to determine whether expert testimony is admissible when the qualifications of the expert are challenged.[12] In Cheairs, the Louisiana Supreme Court held that a trial judge must consider and find true the following: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert[13]; and (8) the testimony assists the trier of fact; *917 through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Cheairs, 861 So.2d at 542.
In this case, Sternberger challenges Mr. Gurtler’s expert testimony solely on the basis of the first prong of the inquiry listed above — i.e., whether he “is qualified to testify competently regarding the matters he -intends to address.” The record reflects that Mr. Gurtler received a Bachelor of Science in Civil Engineering from Tulane University, in 1978 and has been in the home inspection industry since the 1980s. He has inspected thousands of homes for resale-purposes as well as-with respect to damages from storms, defective construction, and moisture intrusion.[14] Mr. Gurtler is a licensed general contractor and has worked on numerous residential and commercial projects throughout his career.
hsMr. Gurtler testified that he has been previously accepted as an expert in civil engineering in multiplé parishes throughout Louisiana as well as in other states and in federal court. He has also qualified as an expert in multiple Louisiana courts in general contracting, home inspection, moisture management, and construction management.
At trial, Mr. Gurtler testified to his thorough interior and exterior inspections of plaintiffs’ home over a three-year period. He found that, at each inspection, the drywall cracking and -trim work separations became more pronounced. He testified that, in his experience, the physical findings in plaintiffs’ home, including nonfunc-tioning windows and doors, were extremely abnormal for a newly constructed home. In 2013, Mr. Gurtler and his brother, Friedrich. Gurtler, inspected the. home; Mr. Gurtler. testified that he found -the front porch columns were “displaced relative to their original' positions” and that the front porch began to slope toward the front door of the home. During that inspection, he and Friedrich .Gurtler performed floor, level readings to measure differential settlement and compared those readings to those from the 2010 inspection. Considering -the increased differential settlement, continuing several years after construction, Mr. Gurtler and Mr. Fried-rich Gurtler opined that the home was in serious structural "distress. Mr. Gurtler testified that he" based his opinions primarily upon his observations and physical findings during the home’s inspections, over a period of three years.
There is no requirement under La. C.E. art. 702 or under the three-prong inquiry adopted by the Louisiana Supreme Court in Cheairs that mandates that an expert be licensed in a field to , provide expert testimony in that field. See Voth v. State Farm Fire & Cas. Ins. Co., 07-4393, 2009 WL 411459, 2009 U.S. Dist. LEXIS 18479 (E.D.La.2/17/09). In, qualifying an expert witness, “tlie emphasis is on learning and skill rather‘than on possession of a license in a particular field.”' Malcomb v. Humphries, 347 So.2d 1, 3 (La.App. 3 Cir.1977); see also Cheairs, 861 So,2d at 542. In fact, formal education or training in a particular field is not always necessary to qualify as an expert in a particular field. Mistich v. Volkswagen of Germany, 95-0939 (La.1/29/96), 666 So.2d, 1073. Experience alone is. normally sufficient to qualify a witness as an expert. Cheairs, supra.
The lack of a license in a. field does not ea/rte blanche prohibit the qualification of that expert or the admissibility of his *918 testimony. The lack of a license is not dispositive; rather, the lack of a license in a field is a factor to consider in determining the weight, not the admissibility, of the testimony. See Voth, supra (holding that “although the lack of a professional engineering license in Louisiana is a factor that the jury is free' to consider in determining the weight to accord to [the witness’] testimony, it is not determinative of the admissibility of that testimony — ”).
A trial judge has broad discretion in both the qualification of an expert witness as well as in determining the admissibility of that expert’s testimony. Based upon Mr. Gurtler’s education, knowledge, and experience, we find that the trial judge did not abuse her discretion in accepting Mr. Gurtler as an expert in the field of eiigineering. This assignment lacks merit.

The New Home Warranty Act

On appeal, Sternberger asserts that the trial judge erred in awarding plaintiffs damages under the New Home Warranty Act. First, Sternberger claims that plaintiffs’ claims for reimbursement for plumbing repairs are perempted under the two-yeár warranty period provided under Lá. R.S. 9:3144. Second, he asserts that plaintiffs are precluded from receiving reimbursement, for plumbing repairs because they failed to provide him the statutorily required notice under La. R.S. 9:3143. Third, he asserts that the trial judge erred in awarding plaintiffs damages |17for flat-work repairs, including repairs to the home’s driveways and sidewalks, asserting that those damages are specifically excluded under La. R.S. 9:3143.
The Louisiana Supreme Court has recently discussed the purpose and scope of The New Home Warranty Act (NHWA). In Shaw v. Acadian Builders & Constrs., LLC, 13-0397 (La.12/10/13), 130 So.3d 914, 917, the Court stated:
The NHWA was introduced by the legislature to “promote commerce in Louisiana by providing clear, concise and mandatory warranties for the purchasers and occupants of new homes in Louisiana,” and the act sets out “the exclusive remedies, warranties, and peremptive periods as between builder and owner relative to home construction.”
The NHWA provides the exclusive remedies, warranties, and prescriptive periods as between the builder and owner relative to new home construction. Stokes v. Oster Dev., Inc., 01-780 (La.App. 5 Cir. 1/15/02), 807 So.2d 987, 990. Louisiana jurisprudence has consisténtly held that the NHWA is the exclusive remedy when the cause of action arises- from construction defects, violations of the building code, or poor workmanship. Thorn v. Caskey, 32,310 (La.App. 2 Cir. 9/22/99), 745 So.2d 653; Sowers v. Dixie Shell Homes of Am., Inc., 33,390 (La.App. 2 Cir. 5/15/00), 762 So.2d 186, writ denied, 00-1770 (La.9/22/00), 768 So,2d 1286; Prestridge v. Elliott, 847 So.2d 789, 793 (La.App. 3 Cir. 6/4/03).
The New Home Warranty Act provides the following express warranties:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
*919 (3) Five years following -the warranty commencement' date, the home will be free from major structural'defects due to noncompliance with the building standards or due1 to other defects in materials or workmanship not regulated by building standards. ■ "
La. R.S. § 9:3144.
The warranty commencement date is the date when legal title is conveyed'to the initial purchaser or the date the home is first occupied, whichever occurs first. Id; Shaw v. Acadian, 130 So.3d at 917; La. R.S. 9:3143(7). Concerning the five-year warranty provided under La. R.S. 9:3144, the NHWA defines “major structural defect” as “... any áctuaí physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions' which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable[.]” The statute lists the following designated load-bearing portions: -
(a) Foundation systems and footings'
(b) Beams
(c) Girders'
(d) Lintels
(e) Columns
(f) Walls and partitions
(g) Floor systems
(h) Roof framing systems
See La. R.S. 9:3143.
The NHWA also provides the following relevant exclusions to the warranty:
Unless the parties otherwise agree in writing, the builder’s warranty shall exclude the following items: ■
(1) Fences, landscaping, including, but not limited to,' sodding, seeding, shrubs, existing and new trees, and plantings, as well as off-site improvements, all driveways and walkways,
or any other improvement not a part of the home itself.
[[Image here]]
(16) Any defect, not reported in writing by registered or certified mail to the builder or insurance company, as appropriate, prior to the expiration of the period specified in Subsection A of this Section for such defect plus thirty days.
La. R.S. 9:3144.
Sternberger asserts that plaintiffs’ claims for reimbursement for plumbing repairs, as well as for flatwork repairs are perempted and/or excluded under the NHWA. Sternberger first asserts that the trial judge erred in awarding damages for plumbing repairs because plaintiffs did not provide him with the statutorily required notice of the plumbing defects under La. R.S. 9:3145 prior to performing the sewer line repairs. The NHWA provides that, before undertaking any repair himself, the owner shall give notice to the builder of the alleged defects, advising the builder of all defects and giving him a reasonable opportunity to comply with the Act and to make repairs. La. R.S. 9:3145; Stokes, supra. Further, as stated above, La. R.S. 9:3144(B)(16) specifically excludes compensation for any defect not reported in writing to the builder with sufficient opportunity to repair.
The record reflects that plaintiffs did not provide notice to Sternberger prior to initiating the plumbing repairs. However, plaintiffs do not allege that the plumbing itself was defective. Rather, plaintiffs claim, as the trial judge found, that the plumbing issues were a result of the failing foundation. The notice requirement under the NHWA is notice of the alleged defect for which one seeks damages. In this case, the alleged defect is the failing foundation as a major structural *920 defect and the plumbing repairs were a consequence, or resulting damages, from that defect. Therefore, we find that the notice provisions under La. R.S. 9:3145 are not applicable to the'plumbing repairs, under the specific facts of this case.[15]
Sternberger also asserts that plaintiffs’ .claims for plumbing repairs are perempted pursuant to the .two-year per-emptive provided under La. R.S, 9:3144. I mi As discussed above, plaintiffs do not claim, and the trial court did not find, that the plumbing system itself was' defective, necessitating repairs. Rather, the trial judge found that the abnormal settlemént of the newly constructed home caused the resulting plumbing damages. Therefore, under the facts of this case, we find that the five-year warranty period applicable to major structural defects under La. R.S. 9:8144 applies. " .
The applicable warranty commencement ’date in this case is the date on which the home was first occupied. See Shaw, supra; La. R.S. 9:3143(7). Further, plaintiffs had thirty days after the warranty period expired to initiate suit. See La. R.S. 9:3146. Mr. Reese Kinler, an employee with the St. Charles Parish Department of Planning and Zoning, testified that the Parish did not rélease the home for purposes of electricity connection until May of 2005' and did not issue a permit for occupancy until August 1, 2005. At trial, the previous owners,-the Hingles, testified that they first occupied the home in April of 2005. In her reasons for judgment, the trial court relied on the Parish employee’s testimony concerning-occupancy. However, the trial judge acknowledged that, even' if she believed the Hingles’ testimony that they first occupied the home, in April , of 2005, plaintiffs’ suit was timely-fax-filed on April 30, 2010, within the thirty-day period following expiration of the five-year warranty period for claims arising out of major structural .defects. We -find the trial judge was correct in finding that plaintiffs’ claims are not preempted under the facts of'this case.
Sternberger also contends that the trial court-erred in awarding plaintiffs damages for the entire amount of the Titan Construction estimate, which included $15,720.00 for repairs to concrete sidewalks and driveways as well as $400.00 for a .fence repair, asserting that those damages. are specifically excluded under the NHWA.
| aiLa. R.S. 9:3144 specifically excludes from the NHWA. “[f]ences, landscaping, including, but not limited to, sodding, seeding, shrubs, existing and new trees, and plantings, ’ as well as-off-site improvements, all driveways and’ walkways, or any other improvement not a part of the home itself.” Plaintiffs argue to this Court that the damages awarded for flat-work were not awarded under the NHWA; rather, plaintiffs contend that the trial court awarded damages for the flatwork and fence repair under general theories of negligence. The NHWA is' the exclusive remedy to a homeowner against.a builder for damages related to construction defects. Stokes, swpra. We find the trial judge erred in awarding plaintiffs damages for the fence repair as well as repairs to the driveways and sidewalks, which are specifically excluded under the NHWA. Accordingly, we amend the trial court judgment to deduct the $15,720.00 award *921 ed pursuant to the Titan Construction estimate for flatwork repairs as well as the-$400,00 awarded for repair to the: exterior fence of the home.[16]
Statutory Immunity under La. R.S. 9:2771
 Sternberger also assigns as error the trial judge’s denial of his statutory immunity defense under La. R.S. 9:2771, which, in pertinent part) provides:
No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for | ^destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed,- or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if thfe destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications.
A contractor is not the guarantor of the sufficiency of plans and specifications drawn by another. Morgan v. Lafourche Recreation District No. 5, 01-1191 (La.App. 1 Cir. 06/21/02), 822 So.2d 716, writ denied) 02-1980 (La.10/25/02), 827 So.2d 1156, If a contractor proves that he complied. with plans and specifications drawn by another, he.is entitled to immunity under La. R.S. 9:2771. Id, There is no immunity, however, when a contractor does not follow plans and specifications. Cupit v. Hernandez, 45,670. (La.App. 2 Cir. 9/29/10), 48 So.3d 1114, 1119; Paragon Lofts Condominium Owners Association, Inc. v. Paragon Lofts, L.L.C., 09-0943 (La. App. 4 Cir. 02/10/10), 32 So.3d 303; Wilkinson v. Landreneau, 525 So.2d 617 (La. App. 5 Cir.1988). Further, there , is no immunity if a contractor cannot show that the alleged defect is the- result of insufficient plans or specifications. See La. R.S. 9:2771.
•At trial, John Bruce, the structural designer, testified that he designed the home’s structure-and that Lee Engineers designed -the home’s foundation. ‘ He stated that the structural and foundatioft plans *922 called for certain requirements — removal of existing soil prior to construction, approval of experienced installers for the cable portion of the foundation, and strength and time -requirements for the concrete mixing for construction of the foundation — and that he was uncertain if Sternberger complied with those requirements; -
At trial, Sternberger testified that he complied with the engineering and foundation design plans provided by J.E. Bruce Design Consultants and Lee Engineers. First, the trial judge, in her reasons for judgment, found that Stembergar,s con-clusory testimony on this issue was not credible.[17] Further, the expert testimony at trial did not prove that there were any insufficiencies in the specifications or design plans for the construction of the home. Although Mr. Gurtler provided inconsistent testimony concerning the home’s design specifications and plans, Sternberger’s expert, Mr. Anderson, testified clearly that he saw no deficiency in the plans and specifications provided by J.E. Bruce Design Consultants or Lee Engineers. Therefore, we find the trial court did not err in finding that Sternberger failed to meet his burden to prove that he complied' with the plans and specifications and that the plans and specifications were the cause of the defect at issue, to entitle him to immunity under La. R.S. 9:2771. This assignment lacks merit.

Third-Party Defendants

In his final assignment of error, Sternberger asserts that the trial court erred in dismissing his third-party demands against J.E. Bruce Design Consultants and Lee Engineer?. The trial judge found that Sternberger failed to meet his burden to prove that the alleged defect at issue was the result of insufficient or faulty structural or foundation design plans. As-discussed above, Sternberger presented no expert testimony to show that the plans designed by J.E. Bruce Designs or Lee Engineers were insufficient or defective in any way. To the contrary, Sternberger’s expert testified that he observed no deficiency in the third-party defendants’- plans. Accordingly, we find no error in the trial court’s judgment dismissing Sternberger’s claims against; third-party defendants J.E. Bruce Design Consultants and Lee Engineers.

J^CONCLUSION

Accordingly, -for the reasons provided herein, we amend the trial court judgment in favor of plaintiffs against Sternberger to deduct $16,120.00, the amount awarded pursuant to the Titan Construction estimate for flatwork and fence repairs specifically excluded under the NHWA. In all other respects, we affirm the trial court judgment in favor of plaintiffs and against Sternberger.

AFFIRMED AS AMENDED

. Plaintiffs also filed suit against Old Republic Home Protection, alleging that it failed to honor the home warranty purchased for the property. Old Republic was dismissed from the litigation prior to trial.

. Plaintiffs also filed suit against the sellers’ realtors, Keller Williams Realty and Michelle Bonano, arising out of the same damages. On October 14, 2011, plaintiffs voluntarily dismissed Keller Williams Realty and agent Michelle Bonano from the litigation.

.The trial judge also found that the Hingles fraudulently concealed a known structural defect to the property and rescinded the sale. However, the trial judge ordered that title to the property not be transferred until the Hin-gles returned the $475,000.00 purchase price as well as additional damages awarded under redhibition law. The Hingles subsequently declared bankruptcy and that portion of the judgment is not at issue in this appeal.

. The record reflects that, prior to the construction of the Hingles’ home, Sternberger had previously retained Mr. Hingle, a flooring contractor, for various construction projects.

. After an unsuccessful attempt to negotiate a contract with a different buyer in November of 2007, the Hingles again listed the property with a different agent. The Hingles completed a second residential disclosure form and *912 again failed to disclose the cracking to the " brick veneer on the east wall of die homo.

. The home warranty policy was unilaterally cancelled due to increased risk after discovery of the plumbing and settlement issues.

. Mr. Gurtler inspected the home on February 24, 2010, August 27, 2010, August 16, 2012, and May 13, 2013.

. Mr. Gurtler testified that "the way you know you have settlement over time, is things are cracking that weren't cracked before — "

. The report is signed by both Mr. Michael Gurtler and Mr. Friedrich Gurtler.

. Mr. Gurtler testified that, in 2010, the highest point of the property was the master bedroom closet. However, in 2013, the highest point of the home had moved to the right front corner of the right, front bedroom, indicating that the highest point in the home from the 2010 inspection had settled significantly.

.Plaintiffs filed in this Court a motion to strike Sternberger's assignment of error related to Mr. Gurtler's qualification as an expert . in the field of engineering. Plaintiffs contend that Sternberger did not properly object to Mr, Gurller's qualifications and is therefore precluded from raising that issue on appeal. The record reflects, that Sternberger failed to file a pre-trial motion challenging Mr. Gurt-ler’s qualifications but did object to his qualifications and testimony at trial. Under the facts of this case, we decline to strike Stcrn-berger’s assignment of error on this issue and we deny plaintiff’s motion.

. In Cheairs, the Louisiana Supreme Court recognized that, while the Daubert analysis concerns the admissibility of an expert’s technique or methodology incorporated in testimony, it does not address the admissibility of expert testimony when the qualifications of the expert are at issue. .The Court adopted the three-part inquiry established by the Eleventh Circuit in City of Tuscaloosa v. Hacros Chemicals, Inc., 138 F.3d 548 (11th Cir.1998),

, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),

. Mr. Gurtler testified that he" maintained a home inspector license until 2007, at which time because of an injury he was unable to meet the license specifications, which require ' walking on rooftops and the like, due to his physical limitations. ' .

. Further, at the time that plaintiffs discovered the plumbing issues, more, than two years after the NHWA warranty commencement date, any claim for a defect to the plumbing itself would have been perempted, Therefore, plaintiffs’ actions, in not notifying Sternberger of what they believed to be mere plumbing concerns, were reasonable under the facts of this case.

. Although not specifically assigned as error on appeal, Sternberger in brief to this Court asserts that the trial judge erred in finding that a "major structural defect” as defined in the NHWA exists in this ease. The testimony at trial reflects that the home, in a period of five to eight years following construction, had "extremely abnormal” physical findings caused by continuous differential settlement, Mr. Gurtler testified that the front porch columns, one of the statutorily designated load-bearing portions of the home under La. R.S, 9:3143, had physically shifted, causing the front porch to slope to the front of the home and allow for potential water intrusion. He further opined that the' home’s foundation never completed settling and continued to settle at an increased rate through the eighth year following construction. Mr. Gurtler opined that the home’s foundation, a statutorily designated load-bearing portion of the home under La. R.S. 9:3143, had failed. He further testified that the inoperable windows and doors throughout the home were a safety hazard, as plaintiffs lack sufficient emergency exits in the case of fire.
Mr, Gurtler further rejected Mr. Anderson’s theprythat the plumbing work-performed by Harold’s Plumbing and the pumping of sand fill under the house caused the differential settlement at issue. Mr.' Gurtler testified that,’ because Harold’s Plumbing and Gator’s Sand Pumping removed the soil/fill from under the house and air dry-pumped the same amount of sand/fill back underneath the house, it could not have caused the abnormal settlement to this home. Mr. .Gurtler testified that the effect of those actions, if any, would be negligible. He testified that tunneling out sand and dry-pumping it back underneath a house after sewer repairs “happens every day of the week” and is "standard operating procedure[ ] in sewer repairs.”
Upon our review of the record in this case, we cannot say that the trial judge was manifestly erroneous in her factual finding that a •major structural defect existed in this case,

. The trial judge pointed out that the founda- ' tion design plans contained certain soil and fill requirements, which Sternberger could not testify as, to whether those specifications or requirements were met in the construction of the home.